JESSE F. BEJOT, APPELLEE, v. AINSWORTH LODGE NO. 130, INDEPENDENT ORDER OF ODD FELLOWS, ET AL., APPELLANTS.

FILED MARCH 29, 1935. No. 29191.

*Robert A. Baker* and *Hoagland, Carr & Hoagland,* for appellants.

*G. A. Farman, Jr., contra.*

Heard before GOSS, C. J., ROSE, EBERLY, DAY, PAINE and CARTER, JJ.

CARTER, J.

This is an appeal from the district court for Brown county by Ainsworth Lodge No. 130, Independent Order of Odd Fellows of Ainsworth, Nebraska, defendant and appellant, and the Grand Lodge of Nebraska, Independent Order of Odd Fellows, intervener and appellant, from a decree foreclosing a mortgage on behalf of appellee Jesse V. Bejot against certain real estate belonging to the defendant below. As a matter of convenience, Ainsworth Lodge No. 130, Independent Order of Odd Fellows, will hereafter be referred to as the Ainsworth Lodge, and the

Grand Lodge of Nebraska, Independent Order of Odd Fellows, will be referred to as the Grand Lodge.

The record discloses that prior to April 1, 1912, the Ainsworth Lodge was the owner of two lots in the city of Ainsworth upon which it desired to build a new lodge hall. Application was made to the Grand Lodge for permission to incur a mortgage indebtedness of $10,000 for this purpose and the same was granted. The trustees of the lodge were authorized to construct the building. After using the funds the lodge had in its treasury, amounting to $1,900, the trustees incurred additional indebtedness amounting to $16,934.58. The trustees without authority from Ainsworth Lodge executed a first mortgage on the premises for $8,000. On July 3, 1920, the trustees without further authority executed a first mortgage upon the property to S. A. Rickenback for $8,000 and a second mortgage to the Citizens State Bank of Ainsworth for $8,800. On September 6, 1924, without additional authority, the trustees executed a first mortgage upon the lodge property to Charles Meyers for $8,767 and two second mortgages of equal priority, one to Charles Meyers for $5,838, and the other to J. D. Cook for $3,502.80. On September 6, 1929, the board of trustees without further authority from the lodge made and executed an extension agreement of these mortgages for a period of five years. The appellee became the owner and holder of the second mortgage originally given to Charles Meyers, in March, 1931. The owner of the first mortgage was brought into the case by order of court and a decree of foreclosure was entered in his behalf from which no appeal was taken. The executor of the estate of J. D. Cook failed to plead and a default was entered against the estate. The trial court found appellee's mortgage to be a valid second lien and decreed a foreclosure thereof in the amount of $6,984.15. From the decree of the trial court, holding appellee's mortgage to be valid and ordering the foreclosure thereof as a second lien, the appellants have appealed.

It is undisputed that the Odd Fellows fraternity is com-

posed, in part, of the Sovereign Grand Lodge, which is the supreme legislative and judicial branch of the order and issues charters to the Grand Lodges of the various states. The Grand Lodge has no powers except those derived from the Sovereign Grand Lodge and is entirely under the control and jurisdiction of the Sovereign Grand Lodge. Under the laws of Nebraska, section 24-607, Comp. St. 1929, the ·Grand Lodge of Nebraska and the Ainsworth Lodge are made corporations. The Grand Lodge issued a charter to Ainsworth Lodge more than fifty years prior to the date of the commencement of this suit. Ainsworth Lodge had no power to own real estate except for its lodge home and all its moneys and funds are trust funds for the charitable purposes of the order. Upon the surrender of the charter of a subordinate lodge, the Grand Lodge becomes the owner of all the property of the subordinate lodge as a trustee to carry out the charitable purposes of the fraternity. It was upon the theory that the Grand Lodge has a reversionary interest in the property of Ainsworth Lodge that the Grand Lodge claimed an interest in the litigation and intervened therein. The statutes of Nebraska provide that an incorporated subordinate lodge may hold real estate in its name if it files a copy of its charter or constitution in the office of the county clerk of the county where the lodge is located. Comp. St. 1929, sec. 24-607. This was never done, and, while Ainsworth Lodge was a corporation, it did not comply with the condition precedent to entitle it to hold real estate in its own name. The laws of the Grand Lodge provide, among other things, that subordinate lodges may hold property "subject to such regulations and conditions, not inconsistent with the laws of the order, as may be prescribed by the respective grand bodies having jurisdiction over them." The laws of the Grand Lodge also provide: "No lodge shall incur any liability or indebtedness for, or on account of, the purchase or erection of any hall building, without first obtaining the consent of the Grand Lodge, or of the executive committee of the Grand Lodge." The by-laws of Ains-

worth Lodge provide: "It shall be the duty of the trustee to take charge of the lodge property not in actual use; to enter into and sign all contracts and agreements of this lodge which may be ordered by a vote of the same. They shall hold in trust for the lodge all real estate, stocks, securities, bonds, mortgages, and investments, and transfer, exchange, or deposit the same or any part thereof, whenever required under the laws so to do: Provided, that no real estate shall be sold or transferred, no security changed, without the consent of the lodge by a two-thirds vote of all the members present at a stated meeting. It shall be their duty to make a report in writing at the second meeting of each term." The appellants contend that the trustees of Ainsworth Lodge were never granted the authority to execute any of the mortgages or extensions heretofore mentioned; that permission was never granted by the Grand Lodge to mortgage the lodge property for more than $10,000; that appellee's mortgage was in excess of the $10,000 mortgage indebtedness authorized and that the execution of the mortgages and extensions was *ultra vires* and void.

The execution and extension of the mortgage in question by the trustees of the Ainsworth Lodge were not *ultra vires* in the sense of being outside the corporate powers of the lodge. The charter of the Grand Lodge did require the subordinate lodge to obtain permission from it to incur the mortgage indebtedness complained of, which it did not do. Also, the by-laws of the subordinate lodge required the granting of authority by Ainsworth Lodge to its trustees before they could execute the mortgage or the extension agreement and this they did not do. These, however, were only regulations of the mode and the agencies by which the corporation should exercise the power granted to it. The distinction between the doing by a corporation of an act beyond the scope of the powers granted to it by statute or by its charter, and an act that amounts to an irregularity in the exercise of the granted powers has constantly been recognized by the courts. The

distinction is well set out in the case of *Central Transportation Co. v. Pullman's Palace Car Co.,* 139 U. S. 24, as follows:

"A contract of a corporation, which is *ultra vires,* in the proper sense, that is to say, outside the object of its creation as defined in the law of its organization, and therefore beyond the powers conferred upon it by the legislature, is not voidable only, but wholly void, and of no legal effect. The objection to the contract is, not merely that the corporation ought not to have made it, but that it could not make it. The contract cannot be ratified by either party, because it could not have been authorized by either. No performance on either side can give the unlawful contract any validity, or be the foundation of any right of action upon it.

"When a corporation is acting within the general scope of the powers conferred upon it by the legislature, the corporation, as well as persons contracting with it, may be estopped to deny that it has complied with the legal formalities which are prerequisites to its existence or to its action, because such requisites might in fact have been complied with. But when the contract is beyond the powers conferred upon it by existing laws, neither the corporation, nor the other party to the contract, can be estopped, by assenting to it, or by acting upon it, to show that it was prohibited by those laws."

Also, in the case of *National Home Bldg. Ass'n v. Home Savings Bank,* 181 Ill. 35, it was held: "It is also argued that the building and loan association is estopped to raise the question whether the contract was *ultra vires* because it has received the benefit of the contract by the conveyance of property to it. That depends, as we think, upon the sense in which the term *ultra vires* is used. It has been applied indiscriminately to different states of fact in such a way as to cause considerable confusion. When used as applicable to some conditions, it has been frequently said that a corporation is estopped to make such a defense where it has received the benefit of the contract.

For example, the term has been applied to acts of directors or officers which are outside and beyond the scope of their authority, and therefore are invasions of the rights of stockholders, but which are within the powers of the corporation. In such a case the act may become binding by ratification, consent and acquiescence, or by the corporation receiving the benefit of the contract. Again, it has been applied to cases where an act was within the authority of the corporation for some purposes or under some circumstances, and where one dealing in good faith with the corporation had a right to assume the existence of the conditions which would authorize the act. Where an act is not *ultra vires* for want of power in the corporation but for want of power in the agent or officer, or because of the disregard of formalities which the law requires to be observed, or is an improper use of one of the enumerated powers, it may be valid as to third persons." See, also, *Alexander v. Culbertson Irrigation & Water Power Co.,* 61 Neb. 333; *Federal Trust Co. v. Damron,* 124 Neb. 655.

In the case at bar, the Ainsworth Lodge had the power to purchase and own real estate for a lodge home and to mortgage the same. Comp. St. 1929, sec. 24-607. The regularly appointed trustees, in mortgaging the property without the consent of the Grand Lodge or the authority of the Ainsworth Lodge, certainly acted within the powers granted by statute and charter, however irregular they may have been. The record discloses that the act of the trustees on September 6, 1924, in renewing the mortgage indebtedness of the lodge for five years was, on October 20, 1924, ratified and approved by resolution of the Ainsworth Lodge. The Ainsworth Lodge at all times retained the benefits of the transaction alleged to have been *ultra vires*. The lodge paid its interest regularly and continued to do so after the extension agreement of September 6, 1929, was entered into. That these acts amount to a ratification of the doings of the trustees cannot be successfully refuted. "Very slight circumstances are sufficient to establish a ratification by a corporation of the acts of its officers where

the benefits have all inured to its advantage." *Love v. Metropolitan Church Ass'n*, 184 Ill. App. 102.

The doctrine of estoppel is also applicable to the case at bar. In *Doerr v. Fandango Lumber Co.*, 31 Cal. App. 318, the court held: "Besides the foregoing considerations, it is very clear that the defendant Fandango company having received, retained, and used for the purposes of its business the money, to secure the repayment of which the mortgage was given, is, and upon a familiar equitable principle should be, estopped from denying the validity of the obligation. As shown, it is not disputed that the corporation received the money and used it in the payment of a part of its debts."

We, therefore, hold that the acts of the trustees of Ainsworth Lodge were within the scope of the powers of the corporation granted by their charter and the statutes, that the irregularities complained of go to the mode of exercising the power and not to a lack of power, that under such circumstances the appellee could plead and prove a ratification or an estoppel against the defense that the action of its representatives was unauthorized. A ratification was clearly proved and we hold that appellee's mortgage was a valid second lien on the lodge property secured thereby. Under the undisputed evidence, and the authorities cited, the Ainsworth Lodge is also estopped to deny its alleged invalidity.

The Grand Lodge is in a somewhat different position. It claims an interest in the subject-matter of the suit by virtue of a reversionary interest in the property of the Ainsworth Lodge that would accrue to it as trustee if the Ainsworth Lodge should surrender its charter for any reason. It is the contention of the Grand Lodge that the action of the Ainsworth Lodge in executing a mortgage in excess of $10,000 is *ultra vires* because written permission by the Grand Lodge was given to incur mortgage indebtedness to that extent only, as required by the constitution of the Grand Lodge of Nebraska. Counsel for the Grand Lodge claim that the Ainsworth Lodge was possessed of

property valued at $6,900 at the time the $10,000 mortgage indebtedness was authorized and allege that it is entitled to have the $6,900 paid ahead of the appellee's mortgage even if the mortgage should be held to be a valid lien on the property. To this we cannot agree. The interest of the Grand Lodge is subsequent to all creditors of the Ainsworth Lodge. It having been decided in this opinion that appellee has a valid mortgage lien against the property of the Ainsworth Lodge, the reversionary interest of the Grand Lodge must be subsequent thereto, unless the provision of the constitution of the Grand Lodge providing that written permission of the Grand Lodge must be obtained to incur the indebtedness would change the result. The argument advanced is that the provision of the Grand Lodge constitution has the effect of rendering the mortgage and extension agreement in question void as being without the charter powers of the Ainsworth Lodge. We are not of that opinion. The requirement of the provision is not a limitation upon the charter powers of the Ainsworth Lodge, but is in the nature of a rule of action prescribing merely a course or manner of corporate action. Strictly speaking, a corporate act is said to be *ultra vires* when it is not within the scope of the powers of the corporation to perform it under any circumstances or for any purpose. The giving of the mortgage and extension agreement was within the scope of the powers of the Ainsworth Lodge. The provision of the Grand Lodge referred to is a mere internal regulation, and as such it does not affect the validity of contracts executed without due observance of its directions so far at least as concerns persons dealing with the corporation without actual or imputed knowledge of the provision of the Grand Lodge constitution. Can it be said that Charles Meyers, the first owner and holder of the mortgage in question, when he took the same from the Ainsworth Lodge was bound to know the provisions of the constitution and by-laws of the Grand Lodge? We think not. A third person, knowing that the transaction was within the general power of the Ainsworth Lodge to per-

form, had the right to assume that any rule of procedure prescribed by the Grand Lodge had been complied with. He was not bound to know of all the special instructions that the Grand Lodge might prescribe by its constitution or by-laws as a means or method for the Ainsworth Lodge to carry out the general powers that it had. One who deals with a corporation is bound to know the general scope of the powers the corporation may have, but he is not bound to know of all the rules, by-laws or constitutional provisions that another corporation, not a party to the transaction, such as the Grand Lodge in the case at bar, may impose.

The argument is made that the Ainsworth Lodge was not a corporation because it failed to file its charter or constitution under which it was working with the county clerk of the county in which it was located. A careful reading of section 24-607, Comp. St. 1929, discloses that Ainsworth Lodge is incorporated by virtue of that section and the requirement that the charter or constitution be filed with the county clerk is merely a condition precedent to its holding title to real estate in its own name. The Ainsworth Lodge, by holding itself out as having the right to own, hold and convey interests in real estate used for corporate purposes, is estopped to deny that it complied with the conditions precedent thereto. It cannot secure funds by mortgaging its property as a corporation and subsequently refuse payment on the theory that it had failed to follow the proper method of obtaining title in the first instance, and at the same time retain its ill-gotten gains. The Grand Lodge has also treated the Ainsworth Lodge as a corporation entitled to hold title to real estate for lodge purposes in its own name by granting permission to it to incur the $10,000 mortgage indebtedness and it also is estopped to deny that the necessary formalities were taken in order to benefit its reversionary interest. The Grand Lodge has received semiannual reports for many years showing the indebtedness of the Ainsworth Lodge to be in an amount ranging from $15,881 to $18,851. Having

had such knowledge for several years, it is not now in a position to come into a court of equity and say that permission was never given and that it had no knowledge. The evidence is such as to show knowledge by the Grand Lodge and acquiescence therein as to the amount of the indebtedness, although it may not have had knowledge of the giving of the mortgage. A careful reading of the provision of the Grand Lodge constitution shows that written permission to incur the indebtedness is all that is required and we find nothing requiring such permission to execute mortgages to secure the indebtedness. The Grand Lodge has no equity by virtue of its reversionary interest as against the appellee, who stands in the same position as the person who loaned the money to the lodge. The reversionary interest of the Grand Lodge is clearly the interest of the Ainsworth Lodge after the payment of all its just debts, whether secured or not, at the time of the accrual of their interest as trustee. The purpose of the constitutional provision was not to limit the power of the subordinate lodge, as it had the right to own real estate upon which to build a lodge home. Its purpose was to permit a supervisory capacity by the Grand Lodge over the business affairs of the subordinate lodge. The Grand Lodge desired as a matter of policy that its business judgment was to be considered before the indebtedness could be incurred. The Ainsworth Lodge did not comply and the Grand Lodge acquiesced therein. Can it be said that a third person who has complied with his contract must suffer while both the Grand Lodge and the Ainsworth Lodge retain a benefit? It is clearly inequitable. The Ainsworth Lodge has violated the constitution of the Grand Lodge which it was under obligation to obey, and it may be subject to penalties prescribed by the fraternity for so doing, but the appellee, in a court of equity, is not compelled to take the loss while each of the defendants retains the benefits. The trial court was right in holding that appellee had a valid second lien superior to any claim of the Grand Lodge.

The appellants contend further that if appellee is entitled to a lien on the premises it should not be for the full amount of the mortgage note. The evidence discloses that on April 18, 1931, and for several years prior thereto, the appellee Bejot was a member of Ainsworth Lodge and the board of trustees thereof; that in March, 1931, while such member and trustee, Bejot traded for the second mortgage being sued on in this action at a price claimed to be far less than its face value. The contention of the appellants is that Bejot occupied a fiduciary relation with the appellants and that he had no right to make a profit at the expense of the appellants and that they are entitled to the benefit of any bargain that he may have made.

The evidence is undisputed that Bejot was a trustee of the Ainsworth Lodge at the time he purchased the mortgage and was for many purposes acting in a fiduciary capacity for the members of the Ainsworth Lodge. The record fails to disclose that the Ainsworth Lodge had any special or general fund from which money could have been obtained to purchase or pay the mortgage in question at the time Bejot bought it. Neither was Bejot under any duty on behalf of the lodge with reference to the mortgage at the time he dealt for it. The only difference that the transaction made was that the debt and security belonged to Bejot instead of Meyers. Counsel for appellants cite many cases in support of their contention. Upon examination, we find that they hold in substance that directors, trustees or other officers of a corporation who are entrusted with its interests, and occupy a fiduciary relation towards it, will not be allowed to contract with the corporation, directly or indirectly, or to sell property to it or purchase property from it, where they act both for the corporation and themselves. We concur with counsel for appellants that this is a proper statement of the law but the appellee in the case at bar does not come within the rule. Appellee dealt with a third person for a mortgage given by the lodge at a time when he was under no obligation to the Ainsworth Lodge regarding the mortgage.

The only question for determination is whether appellee can do this under the circumstances above shown. This proposition was well discussed in the case of *Glenwood Mfg. Co. v. Syme,* 109 Wis. 355, as follows: "The cases all agree that an officer or director cannot rightfully seek and obtain profit at the expense of the corporation or its stockholders, and is bound to manage its business affairs so as to promote the common interests. The rule has been broadly stated by some of the authorities that 'a trustee, executor, or assignee cannot buy up a debt or encumbrance to which the trust estate is liable, for less than is actually due thereon, and make a profit to himself.' Perry, Trusts, sec. 428. That is the doctrine sought to be invoked in this case, as applicable to a director regarded as a trustee of the corporation. But the statement, however correct in its application to specific instances, must be taken with the limitations which belong to it. The foundation of the rule is that a fiduciary agent, owing a duty to his principal, cannot make a contract for his own benefit which is inconsistent with that duty. It is where there is a collision between trust duty and personal interest that the equitable prohibition applies. The cases usually cited to support the doctrine are where a trustee buys in the property of his principal at a sacrifice for his benefit, when, if he bought it at all, it was his duty to do it for his principal, or he makes a contract in behalf of his principal with himself, directly or indirectly, as the other party to the agreement, or where by some secret arrangement he makes a profit directly at the expense of his principal. * * * As before stated, the entire basis of the rule consists in the collision between trust duty and personal interest. Can it be said that any such conflict exists in the ordinary case of the purchase by a director in a going corporation of its outstanding obligations? This is the test to be applied to the facts stated in the complaint. It is nowhere stated whether the notes purchased by Syme were due or not. It is not claimed that any fund had been provided for the payment of these obligations. No special liquidation thereof had

been ordered by the corporation. No fact or circumstance is alleged charging him with a present duty to act for the corporation which would make it inconsistent for him to make a personal purchase of these notes, save that he was an officer and director. On the contrary, it is alleged that the company was embarrassed and without funds to pay pressing demands—not that it was insolvent, but hard up. There was no present duty resting upon Syme to extinguish the notes, so far as appears from the complaint. It is not charged that he neglected any duty he owed to the corporation in not securing funds for their discharge, or that he diverted any of its moneys properly applicable thereto to other purposes. The plaintiff's case rests upon the bald proposition that, being an officer, he could not purchase said notes at a discount. * * * As we construe the complaint, it fails to show any breach of duty on the part of Mr. Syme for which he could be held liable in this action."

In *Inglehart v. Thousand Island Hotel Co.,* 32 Hun (N. Y.) 377, it was held: "So also a trustee or director may, with his own money, purchase for himself of a third person a valid and subsisting outstanding debt owing by the company, and secure a perfect title thereto. Such a transaction is not even the ground for entertaining the suspicion that it is in violation of any duty which he owes the corporation, and there is no presumption of law against its fairness. If the obligation is valid the owner may sell and transfer it to any one who is willing to become a purchaser, and he thereby secures an unquestioned title. * * * The other question to be considered in this connection is, will the trustee or director be permitted to enforce a collection of the debt thus acquired for its entire amount, or shall he be limited to the sum which he actually paid for the debt or obligation. I am unable to discover any good reason why he should not be permitted to enforce payment for the full amount, nor can I find any decision limiting the trustee to the sum actually paid." See, also, *Seymour v. Spring Forest Cemetery Ass'n,* 144 N. Y. 333; *McIntyre*

*v. Ajax Mining Co.*, 28 Utah, 162; *St. Louis, F. S. & W. R. Co. v. Chenault*, 36 Kan. 51. Appellee clearly falls within the rule supported by the above authorities.

The judgment of the district court is in all respects correct and it is hereby

AFFIRMED.