## COLLINS et al. v. RUSSELL et al.
### No. 11684.

Circuit Court of Appeals, Eighth Circuit.

Sept. 5, 1940.

Charles V. Garnett, of Kansas City, Mo. (C. D. Ritchie, of McCook, Neb., Don Kelley, of Lincoln, Neb., Rufus Burrus and Burrus & Burrus, all of Independence, Mo., and Johnson, Garnett & Quinn, of Kansas City, Mo., on the brief), for appellants.

Walter D. James, of McCook, Neb. (Carson Russell, Luke H. Cheney, Butler, James & McCarl, Cordeal, Colfer & Russell, and Cheney & Cheney, all of McCook, Neb., on the brief), for appellees.

Before WOODROUGH and THOMAS, Circuit Judges, and BELL, District Judge.

BELL, District Judge.

This is an action in equity by appellants as plaintiffs against the appellees as defendants for a decree declaring void the residuary provisions of the will of Emma Meinhardt Easterday, deceased. The case was tried and the court found in favor of the defendants and dismissed the complaint. This appeal is from the order of dismissal.

The heirs at law of the decedent were plaintiffs in the District Court, and the administrator under the will of decedent and four members of Saint John Commandery, No. 16, of McCook, Nebraska, were named as defendants in the original complaint. The Commandery is the devisee under the residuary provisions of the will. The parties will be designated as in the District Court.

The decedent made her will September 16, 1925, providing: "All the rest and residue of my estate, both real and personal, of which I die possessed, I give, devise and bequeath unto St. John Commandery No. 16 of McCook, Red Willow County, Nebraska (Masonic Lodge) in fee simple." She made a codicil June 22, 1937, containing some small bequests and substantially the same provision quoted from the original will. She made a second codicil July 28, 1937, providing for some small additional bequests but not again reciting the provision quoted. She died August 9, 1937, and the will was duly admitted to probate. The greater part of her estate is subject to the residuary provisions of the will.

Promptly after the action was commenced, the defendants filed a motion to dismiss stating as reasons nonjoinder and misjoinder of parties defendant and failure to state a cause of action against the defendants. The motion stated that Saint John Commandery is a benevolent, fraternal and charitable association, that the complaint disclosed on its face that the will had been admitted to probate, that the residuary provisions were valid and that the plaintiffs had no right whatever in the property. An amended complaint was filed naming "Saint John's Commandery No. 16, a corporation" as an additional party defendant and alleging that it was incorporated under Section 24-607, Compiled Statutes of Nebraska, 1929, on January 15, 1938, which was after the death of the decedent. An answer was filed admitting the corporate existence of the Commandery but alleging that it was incorporated April 19, 1887, when it received its charter; and further, that it is a charitable organization. The plaintiffs now contend that the Commandery is not and never has been a corporation, and that the allegation in their amended complaint of its corporate existence was an erroneous conclusion of law.

The case was tried, the court found that the Commandery was a corporation and that it was a charitable organization, and, that as either, it had capacity to take and own the property devised and bequeathed to it by the testatrix.

If the Commandery was incorporated under the laws of the State of Nebraska, the action of the District Court in dismissing the complaint should be affirmed. This is frankly admitted by counsel for the plaintiffs; and, although many questions have been ably presented and elaborately briefed, a determination of this question is decisive of the appeal. We think that the Commandery at all times with which we are concerned was a corporation.

The Commandery claims a corporate existence under Section 24-607, Compiled Statutes Supplement of Nebraska, 1937, the pertinent provisions of which follow: "All the state * * * secret fraternal, benevolent, or charitable * * * lodges * * * issuing charters, to and having subordinate or auxiliary * * * lodges * * * or other bodies within this state which may have been heretofore or may hereafter be regularly established and chartered therefrom, or thereby, including the following: The Grand Lodge, Ancient Free and Accepted Masons; * * * together with each and every subordinate or auxiliary lodge, * * * within this state, under its properly designated or chartered name as has heretofore been, or may hereafter be established and chartered within or for Nebraska by its respective state * * * or other governing body, and working under a charter or charters from its respective state * * * or other governing body, be and the same are hereby made and declared corporations within the state under the name and title designated in the respective charters or constitutions by which name they shall be capable of suing, and being sued, of pleading and being impleaded in the several courts of this state, the same as natural persons. And each of said * * * lodges * * * shall have power to receive the

bequests of real and personal property, to hold * * * both real and personal property * * * and do all other things usually done by corporations for the purpose for which organized."

The statute does not specifically name Saint John Commandery No. 16, or the Grand Commandery of Knights Templar; but the defendants contend that both are auxiliary orders of the Grand Lodge, Ancient Free and Accepted Masons, which is named in the statute. The Court on substantial evidence found:

"10. That on the 16th day of November, 1871, the Grand Encampment of Knights Templar of the United States of America issued a warrant to organize in Nebraska the Grand Commandery of Knights Templar of Nebraska.

"11. That on the 28th day of December, 1871, the Grand Commandery of Knights Templar of Nebraska was organized pursuant to said warrant.

"12. That ever since the 28th day of December, 1871, the Grand Commandery of Knights Templar of Nebraska has been and now is a state secret, fraternal, benevolent and charitable order and lodge, issuing charters to and having subordinate and auxiliary orders and lodges within the State of Nebraska.

"13. That on the 19th day of April, 1887, the Grand Commandery of Knights Templar of Nebraska issued a charter to Saint John Commandery, No. 16, of McCook, Nebraska.

"14. That ever since the 19th day of April, 1887, Saint John Commandery, No. 16, of McCook, Nebraska, has been and now is a subordinate order and lodge of the Grand Commandery of Knights Templar of Nebraska, and has been and now is working under a charter from said Grand Commandery of Knights Templar of Nebraska.

"15. That ever since the 19th day of April, 1887, Saint John Commandery, No. 16, of McCook, Nebraska, has been and now is a secret fraternal, benevolent and charitable order and lodge.

"16. That the Grand Commandery of Knights Templar of Nebraska and Saint John Commandery, No. 16, of McCook, Nebraska, were prior to the year 1925, and at all times since have been, auxiliary orders and lodges to the Grand Lodge, Ancient Free and Accepted Masons of Nebraska.

" * * *

"18. That Saint John Commandery, No. 16, of McCook, Nebraska, was at the date of the death of Emma Meinhardt Easterday on August 9, 1937, a regularly organized and existing Masonic Lodge, working under a charter from a state Masonic order and lodge, which state Masonic order and lodge was, in turn, working under a charter from a national Masonic lodge and organization."

The relation of the Masonic organizations to each other as shown by the evidence and as found by the Court should be observed. The Grand Lodge, Ancient Free and Accepted Masons, commonly known as the Blue Lodge, is the foundation of all Masonry. It confers the first three degrees. Beyond that there are two divisions of Masonry: the Scottish Rite that confers degrees from four to thirty-two inclusive, and the York Rite that confers degrees leading to Knight Templar. No one can belong to the Scottish Rite or the York Rite who is not a member of the Ancient Free and Accepted Masons. All the various Masonic bodies have not been named in the statute because they are subordinate and auxiliary lodges to the one that is named. The original statute was enacted in 1869, Laws 1869, p. 64, under the title, "An Act Incorporating Subordinate Lodges of Masons, Odd Fellows and Good Templars." Undoubtedly, the one word "Masons" was intended to cover all branches of Masonry or other language would have been used. The Act often has been amended and the only time in the entire legislative history of the Act that there has been any distinction drawn between the various Masonic bodies was in 1905 when the Act designated as corporations "all organizations known as subordinate lodges of the Ancient Free and Accepted Masons," and a proviso was added as follows: "Provided that nothing contained in this act shall apply to the Masonic bodies, known as Ancient and Accepted Scottish Rite of Free Masonry." Chapter 41, Session Laws 1905. This proviso was eliminated in 1907. Chapter 31, Session Laws 1907. The fact that a proviso was used to remove one of the Masonic bodies from the operation of the Act is an indication of the legislative intent that the designation of the one basic order was sufficiently comprehensive to include all Masonic bodies. Apparently, it was intended that the designation of the tree meant not only the trunk but also all of its many branches. The law in substantially its present form was enacted in

1907. Clearly, the legislature desired to eliminate any necessity of incorporation of each of the numerous state fraternal, benevolent and charitable societies and their subordinate and auxiliary lodges. Such was the theory of the Supreme Court of Nebraska in Ancient and Accepted Scottish Rite of Freemasonry of Lincoln v. Board of County Commissioners of Lancaster County, 122 Neb. 586, 241 N.W. 93, 81 A.L.R. 1166, wherein the Court held that the appellant was a subordinate body to the Supreme Council of the Ancient and Accepted Scottish Rite of Freemasonry of the Southern Jurisdiction of the United States of America and was a part of the general Masonic structure, and that the statute here involved was applicable to a Masonic body not named in it. In that respect we are in accord with the reasoning of that case.

The statute provides that all state secret fraternal, benevolent and charitable societies issuing charters to and having subordinate lodges in the state are bodies corporate. The evidence in this case shows that the Grand Commandery of Knights Templar of Nebraska was organized in 1871, that since that time it has issued charters to subordinate lodges, and that it issued a charter to Saint John Commandery in 1887. It was not necessary that Saint John Commandery have a charter from the Grand Lodge, Ancient Free and Accepted Masons, because it had a charter from the Grand Commandery of the Knights Templar, its state governing body, and an auxiliary lodge of Ancient Free and Accepted Masons. Furthermore, it was not necessary that the Grand Commandery of Knights Templar have a charter from a national organization.

The statute, by amendment, now specifically enumerates approximately one hundred organizations such as secret orders, charitable associations, college fraternities, luncheon clubs, and others. The plaintiffs contend that since the statute enumerates so many separate organizations and does not mention either the state or national Knights Templar Lodges or the Saint John Commandery, the maxim "expressio unius est exclusio alterius" applies. This principle is not applicable here because the statute by its language incorporates not only the organizations specifically named but also all state fraternal, benevolent and charitable societies, and "each and every subordinate or auxiliary lodge" thereof. The maxim is useful as a guide in determining the intention of the legislature, but if it clearly appears from the language of the Act itself that it was not intended that the express mention of one excluded all others, the maxim does not assist in the interpretation of the law. Springer v. Government of Philippine Islands, 277 U.S. 189, 206, 48 S.Ct. 480, 72 L.Ed. 845. To apply it here would invalidate the provision relating to the incorporation of subordinate and auxiliary lodges and thus defeat the chief objective of the Act. Obviously, there was not the slightest intention of excluding subordinate and auxiliary lodges of state fraternal, benevolent or charitable orders even though not specifically named in the Act. The narrow construction contended for by the plaintiffs cannot be sustained.

The plaintiffs contend that Saint John Commandery and the Grand Commandery of Knights Templar of Nebraska were not corporations at the time of the death of the decedent because the charter of the former had not been filed in the office of the County Clerk and of the latter in the office of the Secretary of State. This was not essential to constitute the respective organizations bodies corporate within the meaning of the statute. When the conditions prescribed by the statute are fulfilled, such as the issuance of a charter to a local lodge by a state governing body, incorporation automatically follows, and the filing of the charter is merely a condition precedent to the right to hold title to realty. Bejot v. Ainsworth Lodge, 128 Neb. 631, 259 N.W. 745.

We conclude that Saint John Commandery, No. 16, of McCook, Nebraska, now is and at the time of the death of the decedent was a corporation and as such had capacity to take title to the property under the residuary provisions of decedent's will. We deem it appropriate to add, however, that we would have no difficulty in sustaining the conclusion of the District Court that the Commandery is a charitable organization.

Accordingly, the action of the District Court is affirmed.