In re Estate of S. J. FISHER, Deceased, AMANDA K. FISHER, Executrix, Appellee, CLARA J. SCOTT, Claimant, Appellant.

**Trusts:** TERMINATION: BURDEN OF PROOF: EVIDENCE. Where one
1  purchases bank stock with funds of another taking title in his own name, he will be presumed to remain in possession of the same as a trustee, *in the absence of evidence to the contrary*; and the burden is on the trustee to show a determination of the trust. Evidence held insufficient to show that the trustee became the real owner of the stock.

**Trusts:** STATUTE OF FRAUDS. A resulting trust may arise from the
2  investment by one of the funds of another in bank stock without the knowledge of the beneficiary, but where an investment is so made and title taken in the name of the trustee pursuant to an arrangement of the parties, an express trust is created which is not within the statute of frauds.

**Estoppel.** The fact that one holding bank stock in trust became
3  a director in the bank on the strength thereof, did not estop the beneficiary to deny that the trustee was the real owner.

**Jurisdiction.** A state court has jurisdiction to determine the own-
4  ership of national bank stock as between individual claimants and where the bank is not a necessary party.

*Appeal from Buchanan District Court.*— HON. F. C. PLATT, Judge.

TUESDAY, MARCH 7, 1905.

CLAIM filed by Clara J. Scott against the estate of S. J. Fisher, deceased, alleging her ownership and right to the possession of 14 shares of bank stock held in the name of S. J. Fisher at the time of his death.   Judgment disallowing the claim, and Clara J. Scott appeals.— *Reversed*

*Roy A. Cook* and *Cook & Leach,* for appellant.

*Lake & Harmon,* for appellee.

WEAVER, J.— Aside from a few legal propositions arising upon the admissibility of evidence, none of which are of decisive importance, this controversy turns wholly upon questions of fact.   However much it may gratify counsel and parties in such cases to have this court enter upon a minute discussion of the testimony and point out the particular facts or circumstances upon which its conclusion is based, it is seldom that such an exposition can be of any value to the profession as a precedent.   There are no exceptional circumstances to justify us in a departure from the rule in the present instance.   We have carefully examined the record, and, in view of the fact that our finding does not coincide with that of the learned court below, have gone through the entire testimony a second time, with the result that our first impression has been confirmed.

The evidence as a whole leaves no room for  a  reasonable doubt that in the year 1876 the plaintiff received arrears of pension from the United States in the sum of $2,475, and that this money was deposited in the bank in the name of her brother, S. J. Fisher, against whose estate the present claim is made.   It is equally well established that with a part of this money he purchased and took in his own name nine of the shares of bank stock.   The trial court in its

written opinion concedes the correctness of these statements. It is but little less clearly shown that certain real estate of considerable value belonging to Mrs. Scott was held for some years in her brother's name, when he finally purchased it, giving her his notes for the agreed price. Later, he purchased for her a home, which for a considerable period he carried in his own name for her use and benefit. In the year 1879 he purchased additional bank stock, five shares from one Emery and five shares from Hester A. Fisher, taking the assignment of both certificates in his own name. It is the claim of plaintiff that these shares were also purchased with her money and for her benefit. She further claims that thereafter, in the year 1884, she sold to her brother the five shares purchased from Hester A. Fisher. Plaintiff's claim that this last-mentioned certificate was purchased for her has considerable corroboration in circumstances shown in testimony, but, as she asks no recovery upon this item, we need give it no further consideration. Concerning the five shares purchased from Emery, the case is not so clear. Some of the testimony offered in its support is open to the objections made by the appellee, and it is all given by witnesses whose interest in the controversy or relationship to the claimant tends to weaken in some degree its weight and value. Were the claim of the appellant based on this item alone, we should, though with some hesitation, affirm the judgment of the district court. But we find ourselves unable to follow that court with reference to the nine shares of stock which it concedes was purchased with the money of plaintiff. In his opinion the trial judge says: "Assuming, however, that nine shares of the bank stock were bought for the plaintiff's account, what is the state of the case? We find that five of these shares were confessedly sold to the deceased. This leaves four to account for. In view of the whole record — the staleness of the claim; the total lack of evidence that these four shares were not subsequently paid for by the deceased in some settlement with his

sister; the prosperous financial condition of the deceased, and his careful habits; his honesty and evident affection for his sister; the evident lack of prosperity in respect to financial matters of the plaintiff; her care to secure a deed for the homestead, which she thought wise as a precautionary measure, which deed she recorded before her brother's death; and the beneficence of the deceased to the plaintiff, as expressed in his will — I can come to but one conclusion, and that is that there is neither merit, equity, or legal basis in the plaintiff's claim."

The suggestion that " five of these shares were confessedly sold to the deceased " indicates a misapprehension of the record upon this point.   The testimony of the bank officers and the records of the bank, as well as the testimony of the plaintiff, her son and daughter, identify the five shares claimed to have been sold to S. J. Fisher as the shares purchased in the year 1879 from Hester A. Fisher, while it is clearly shown that the original nine shares, which were purchased of one Meyers in 1876, remained in the name of S. J. Fisher until his death.

The reference to the lack of evidence that the shares " were not subsequently paid for " would seem to imply the view that, to establish her claim, plaintiff was required to negative the idea of payment.   This, we think, cannot be the law.   If S. J. Fisher took title to the nine shares of stock in trust for his sister, and of this there can be no question, the presumption, in the absence of other evidence, is that her beneficial interest in the said property continued unchanged.   The burden of showing that such trust was determined, and the trustee thereafter became the beneficial as well as the legal holder of the title, is upon the trustee, and not upon the *cestui que trust*.   In this respect we think the appellee has wholly failed.   The fact that Fisher was prosperous, honest, and kindly disposed toward his sister, and that she was perhaps improvident and unsuccessful in the management of prop-

1. TRUSTS: termination; burden of proof; evidence.

erty, is not inconsistent with the continuance of the trust, but, on the contrary, may afford a very reasonable explanation why he continued to hold the shares in his own name. His interest in his sister, and his knowledge of her lack of business capacity, may and doubtless did influence him in keeping this remnant of income-paying property under his control.   In so doing he did her a favor, not a wrong, and she concedes that to the time of his death her brother regularly and promptly accounted to her for the dividends received upon the stock.

There is nothing in the record which tends in any way to impeach the good faith or honesty of the intestate in his dealings with his sister.   He is shown to have acted as her adviser and trustee in other matters, as well as with reference to this stock.   In no respect does he appear to have manifested a disposition to overreach her, and if, in taking her property into his own name, he offered the suggestion that he thereby added to his own credit in the business world, it is not an unnatural conclusion that it was no more than an affectionate device by which he sought to preserve her estate against her own improvidence.   At any rate, he did use her money to purchase the stock.   The circumstances of the purchase, and his subsequent conduct in reference to the stock, satisfy us that he purchased it for her use and benefit.   There is an entire lack of evidence that he ever purchased or paid for her beneficial interest in it, and we think her claim for its surrender by the executrix must be allowed.

It appears from the record that, upon the strength of the ownership of these and other shares of stock, Fisher became a director in the bank.   The bank is organized as a national bank, and it is said that, in order to be eligible to election as a director, Mr. Fisher was required to represent himself as the owner of the shares in his own right.   On this ground the appellee argues that, the appellant having permitted the stock to be

3. ESTOPPEL.

held in her brother's name, enabling him to become a director in the bank, she is estopped to deny his ownership. There is no merit in this proposition. There is no shadow of evidence that the appellant contemplated any such use of the stock, or that she ever had knowledge or notice of any kind that Fisher held himself out to the bank as the actual beneficial owner. Under such circumstances, no estoppel can arise.

It is also argued by appellee that the stock of a national bank is not subject to control by a state court, and that such court has no jurisdiction to order its transfer by the executrix to the appellant. No authority is cited in support of this proposition, and we think it is not sound. The bank is not a party, nor need it be. The controversy is one to determine the title to certain shares of the stock. It calls for no application or construction of the Acts of Congress, nor can its determination in any manner control, disturb, or interfere with the bank, or with the due exercise of any of its corporate functions. The objection is not well founded.

4. JURISDICTION.

Some question is also made as to the character of the alleged trust, but we think it is not material. If S. J. Fisher invested his sister's money in the stock without obtaining her authority or consent, the court may from such facts find a resulting trust in behalf of the plaintiff; but if, as the evidence clearly tends to prove, he made the investment and took the title to himself, pursuant to an agreement or understanding between them, an express trust was created. Such a trust in personal estate is not within the statute of frauds. *Patterson v. Mills,* 69 Iowa, 755; *Hemstreet v. Wheeler,* 100 Iowa, 290. The rule cited by counsel that clear and satisfactory evidence will be required for the establishment of a trust of the kind here asserted is well settled, and we think the requirement is fully answered in this case.

5. TRUSTS: statute of frauds.

Under the record made, we hold that the appellant is

entitled to recover the nine shares of bank stock purchased by S. J. Fisher in 1876 from J. W. Meyers, and to have an accounting of the dividends received therefrom since the death of said Fisher. The judgment of the district court will therefore be reversed, and the cause remanded for further proceedings in harmony with this opinion.— *Reversed.*