GRAND LODGE OF IOWA OF the INDE-PENDENT ORDER OF ODD FEL-LOWS, Appellant,

v.

OSCEOLA LODGE NO. 18, INDEPENDENT ORDER OF ODD FELLOWS and Osceola Lodge Benevolent Association, Appellees.

No. 53646.

Supreme Court of Iowa.

June 23, 1970.

Nyemaster, Goode, McLaughlin, Emery & O'Brien, Des Moines, for appellant.

White, Stone & Horan, Marion, for appellees.

RAWLINGS, Justice.

By equity action commenced July 29, 1965, plaintiff, Grand Lodge of Iowa. Independent Order of Odd Fellows, seeks benefit of a declaratory decree holding, defendant Osceola Lodge Benevolent Association acquired title to certain real estate conveyed to it by defendant Osceola Lodge No. 18, either as its alter ego or as trustee for the uses and purposes of the Order, and in either event the real estate be held

subject to laws of the Order. Noting the conveyance complained of was openly effectuated in 1948, trial court held the action was barred by pleaded limitation statutes. Plaintiff appeals. We affirm.

There is no substantial dispute as to the factual situation involved. All parties are nonprofit corporations organized under the laws of this state. Both defendants have principal offices in Marion.

The Independent Order of Odd Fellows is a fraternal organization with many declared philanthropic purposes. Among other things Iowa Grand Lodge operates a home for elderly persons and children in Mason City.

The Supreme governing body of the Order is the Sovereign Grand Lodge. It is from this Sovereign that all affiliates in the Order gain existence. Each state in the United States is a jurisdiction, the governing head of each being designated a Grand Lodge. Plaintiff herein is the Iowa Grand Lodge, the principal place of business being in Des Moines. Its charter was obtained from the Sovereign which has a constitution recognized as the supreme law of the Order.

Iowa Grand Lodge is the supreme body of Odd Fellows in this jurisdiction. One of the functions of Iowa Grand Lodge is to charter subordinate bodies such as Lodge No. 18. Iowa Grand Lodge is also required, as a part of its supervisory duties, to effect recognition of and compliance with all laws of the Sovereign Lodge, and those of Iowa Grand Lodge, by subordinate lodges in this jurisdiction.

The record discloses, rules of the Order permit all lodges to acquire property which must be used only for dedicated purposes of the Order. These rules also preclude disposition of property by a local lodge for any purpose other than in furtherance of programs and principles of the Order. They also provide a local lodge shall not dispose of its properties for the purpose of defeating reversionary interests held by the Grand Lodge. In this respect, if a local lodge in the State of Iowa at any time ceases to exist, then Iowa Grand Lodge has a reversionary right to all property held by the local body. On reversion, Iowa Grand Lodge must use such property, first to meet obligations of the extinct lodge, and that done, any funds remaining are to be set aside and employed in support of existing programs of the Order sponsored by the local body. Any surplus then goes to the home at Mason City for use in its operation, or for advancement of other purposes to which the Order of Odd Fellows may be committed.

Local lodges, and in turn individual members of each local agree, when chartered, or on joining, to be bound by all the laws, rules and regulations of the Order, including designated charitable uses of property owned by the Lodge, all as expressed in the constitutions of the Sovereign Grand Lodge, Iowa Grand Lodge, and Code of General Laws.

October 20, 1869, defendant Lodge No. 18 was chartered. December 12, 1932, its articles of incorporation were approved by Iowa Grand Lodge and resultantly filed of record December 29, 1932.

The real estate in question is located in Marion. Thereon is a two story building, the first floor being rented to business tenants, the second used as an assembly or meeting hall. This property was acquired by Lodge No. 18 prior to December 1920.

Defendant Osceola Lodge Benevolent Association was incorporated April 20, 1948. The decision to form that organization was made by a vote of Lodge No. 18 members. The purposes and objects of this Association, as set forth in its articles, include general benevolences as well as ownership and management of real estate. *Its principal function*, however, as revealed by the record before us, *is to operate, manage and*

*improve the real estate here involved, and protect it from any obligations of Lodge No. 18.*

May 13, 1948, Lodge No. 18, with no semblance of consideration, and absent consent of the Sovereign, or Iowa Grand Lodge, conveyed the property previously acquired and held by it as aforesaid, to defendant Association, which neither had nor has any affiliation with the Order. The Association has since held open and adverse possession.

Iowa Grand Lodge, admittedly having both actual and constructive notice of the foregoing conveyance, at once directed the Grand Master to investigate and direct a reconveyance to Lodge No. 18. This was done in a letter dated October 29, 1948, in which he warned that section 35 of paragraph 10, constitution of Iowa Grand Lodge, prohibited use and disposition of any lodge property except for charitable causes sponsored by the Order. Shortly thereafter, in November 1948, a delegation from Iowa Grand Lodge met with members of Lodge No. 18 and demanded a reconveyance of the real estate, which was refused. An attempt to remove the charter at that time failed.

November 16, 1948, pursuant to an Association special meeting, its articles of incorporation were amended to provide that property of the Association, in event of dissolution, be distributed to the members thereof in proportion to duration of membership in Lodge No. 18. The foregoing corporate amendment was promptly filed of record, thus imparting constructive notice thereof to Iowa Grand Lodge. Sections 504.1 and 504.19–504.20, Code, 1946; Bristow v. Lange, 221 Iowa 904, 912, 266 N.W. 808; 45 Am.Jur., Records and Recording Laws, sections 85–86, pages 467–469. See also sections 504A.30–504A.38, Code, 1966.

In March of 1965, a delegation from Iowa Grand Lodge again went to Marion and demanded a reconveyance of the property to Lodge No. 18, which was refused. Thereupon the delegation took the Lodge charter and suspended its operation as an adjunct of the Order.

It further appears that anyone who was a member of Lodge No. 18 could, but was not required to be a member of the Association. Both corporations are operated by a board of trustees. Incidentally the trustees of Lodge No. 18 are the same persons who serve as trustees of the Association. However, separate and distinct meetings have been held, and separate records and minutes are maintained for each corporation. Except for a small rental of less than $150 a year which was paid the Association for about the first two years after transfer of the property in 1948, Lodge No. 18 has since remitted no rent for permissive use of the second floor of the building as a meeting place. Members of the Association have never been assessed for dues since its organization. That corporate entity has paid no income taxes, and until three years before trial commenced had filed no returns. Apparently the real estate here involved is unencumbered.

As already disclosed, plaintiff's express purpose in bringing this action is to obtain a declaration of rights of the Order relative to the real estate, establish usage of same, and avoid loss of its reversionary interest. Also as stated by plaintiff, the charter of Lodge No. 18 will be restored if and when the property held by the Association is reconveyed to Lodge No. 18. No other relief is sought.

By answer defendants deny plaintiff's right to any relief, and specifically assert its cause of action is barred by our limitation statutes.

After finding the facts substantially as here related, trial court found no merit in plaintiff's contention that the Association is the alter ego of Lodge No. 18, pointing out, membership of the two organizations

can be less than identical; separate meetings are held; any action on the part of the Association is by its members, including amendment of the corporate articles; and Lodge No. 18 has no control over the Association, or vice versa. In essence the court found, any relationship between the two organizations can continue, be modified or dissolved, at the election of the Association, but not by action of Lodge No. 18.

■ In refusing to accept plaintiff's contention to the effect the Association's title to this real estate is subject to an express trust imposed upon it while owned by Lodge No. 18, the court reviewed Code sections 614.1(6), 614.14, 614.17, and 614.24, which are limitation acts. In so doing it recognized the well settled rule that when a trustee violates its trust, denies it, or repudiates it, to the knowledge of the beneficiary, a cause of action against the trustee accrues immediately to the beneficiary, thereby causing these limitation statutes to then commence running. It held plaintiff's right, if any, accrued in 1948 (almost 17 years before commencement of this case) when the Lodge violated its trust by a conveyance to the Association, the action stands barred by applicable statutes of limitation, and because of laches.

Plaintiff relies on these propositions in support of a reversal: (1) the rules and laws of the Independent Order of Odd Fellows are binding upon the various lodges within the Order and upon individual members thereof; (2) the real estate involved was acquired and owned by defendant Lodge No. 18 for purposes and uses of the Order, including the reversionary interest of the Grand Lodge in event the subordinate lodge ceased to exist, and the local lodge cannot avoid its utilization under laws and rules of the Order by an unauthorized disposal; (3) the real estate presently held by the Association is subject to all these laws and rules because the Association is the "alter ego" of Lodge No. 18; (4) if the Association is a separate legal entity, then legal title to the real estate obtained from Lodge No. 18 was impressed with a trust which required it be held for uses and purposes of the Order, and this trust has never been repudiated by the Association prior to commencement of this action; and (5) the doctrine of laches is inapplicable.

Although other issues are presented and will be considered, it appears the vital question posed is whether the conveyance by Lodge No. 18 to the Association constituted a repudiation of any trust relationship then in effect as between Iowa Grand Lodge and Lodge No. 18.

■ I. Provisions in the constitution, by-laws and charters of an incorporated charitable fraternal order, subscribed to by the members thereof, providing that assets of a subordinate body be used for purposes of the Order, and that upon dissolution of the subordinate body any property remaining be transferred to its superior for such uses are not, per se, void and unenforceable absent specific legislation to the contrary, or against public policy. Sisters of Mercy of Cedar Rapids v. Lightner, 223 Iowa 1049, 274 N.W. 86; Pennsylvania State Camp, etc. v. Washington Camp No. 135, 385 Pa. 492, 123 A.2d 701; Bacon on Benefit Societies, Second Ed., Vol. 1, section 69, page 107; Fletcher Cyclopedia Corporations, (1968), Vol. 6A, section 2803, pages 269–271; and 10 C.J.S. Beneficial Associations § 60, page 302. Also see Bejot v. Ainsworth Lodge No. 130, I.O.O.F., 128 Neb. 631, 259 N.W. 745.

■ Notwithstanding the fact Code section 558.68 provides: "Every disposition of property is void which suspends the absolute power of controlling the same, for a longer period than during the lives of persons then in being, and twenty-one years thereafter.", we do not find it applicable in the instant case. This prohibition must be distinguished from the situation where real estate is held in trust for a

charitable purpose under a valid agreement with a holder of the legal title. That distinction was accorded recognition in Sisters of Mercy of Cedar Rapids v. Lightner, supra, where we said at 223 Iowa 1059, 274 N.W. 92: "While the rule against perpetuities and the rules of law prohibiting restriction upon the alienation of property are distinct and separate, their object is the same and are founded on the public policy which prevents property being taken out of commerce or held so that it cannot be conveyed."

And in the same case, at page 1062, 274 N.W. at page 93 is this statement: "A gift or devise of real estate with a provision that it shall not be alienated does not create a perpetuity forbidden by law but is a perpetuity permitted both in equity and law if it is for a charitable purpose. Perin v. Carey, 24 Haw. 465, 16 L.Ed. 701.

"If the defendant in this case had conveyed the land in question to the plaintiff by gift for a charitable use and imposed a restraint against alienation of the real estate, it would have been valid."

Here there was a valid agreement between the Sovereign and in turn Iowa Grand Lodge, with Lodge No. 18 and its members, regarding property acquired by the latter. Moreover we find no applicable rule or regulation which expressly prohibited Lodge No. 18 from selling any real estate acquired by it. Conversely the agreement was that property acquired by Lodge No. 18 be devoted to causes and good of the Order. And if disposed of, with or without consent of Iowa Grand Lodge, then all sale proceeds must be used for Odd Fellowship purposes, with no sale or conveyance to be made as a means by which to defeat reversionary rights held by Iowa Grand Lodge.

In Sisters of Mercy of Cedar Rapids v. Lightner, supra, as noted at 223 Iowa 1053, 274 N.W. 86, there was an absolute restraint on alienation in paragraph "Sixth" of the agreement. This court there held that proviso invalid. In the instant case there was no such restriction as is prohibited by section 558.68 of the Code. Also, unless the laws and regulations found in the constitution and by-laws of the Order are violative of public policy, regarding alienation, the agreement is not void or unenforceable.

Additional support is given that view in District Grand Lodge No. 25, Grand United Order of Odd Fellows v. Jones, 138 Tex. 537, 160 S.W.2d 915, 922; Pennsylvania State Camp, etc. v. Washington Camp No. 135, supra; and Harker v. McKissock, 7 N.J. 323, 330–331, 81 A.2d 480, 483. See also Annos. 168 A.L.R. 959.

■ II. Most, if not all, courts and authorities generally agree that constitutions, charters, and by-laws of charitable fraternal organizations, subscribed to by an affiliate lodge and its members, are binding. In 10 C.J.S. Beneficial Associations § 60, page 302, is this statement: "The charter of a subordinate lodge and the constitution and by-laws of the parent organization constitute a contract between the two." Similar language is found in 36 Am.Jur.2d, Fraternal Orders and Benefit Societies, sections 35–37, pages 833–835.

Also Bacon on Benefit Societies, supra, Vol. 1, Second Ed., section 69, page 107, states: "The rights and powers of the officers and members of the associations or lodges, superior or subordinate, are regulated by their articles of associations, or constitution and by-laws, which constitute the contract of the members with each other and by the provisions of which they undertake to be bound."

■ We now hold, by virtue of the covenant between Lodge No. 18, its members, and the Order, it was agreed the Order would have a reversionary right in any property acquired by the lodge; that

Lodge No. 18 acquired and held title to the subject property, in trust, for uses and purposes of the Order; all as a matter of reasonable obligation undertaken contractually, being in no way against public policy. This view finds support in Pennsylvania State Camp, etc. v. Washington Camp No. 135, supra. See also Ponzelino v. Ponzelino, 238 Iowa 201, 203, 26 N.W.2d 330, and Restatement, Second, Trusts, section 26, comment k.

III. As heretofore indicated, the ultimate issue involved in this appeal is: Did the conveyance of property held by Lodge No. 18 to the Association, absent any consideration or consent on the part of either the Sovereign or Iowa Grand Lodge set our limitation statutes in motion?

At the outset, with regard to plaintiff's contention the Association was the "alter ego" of Lodge No. 18, for reasons disclosed infra, we need not resolve that issue.

The "alter ego" doctrine is nothing more nor less than an equitable, and sometimes elusive fiction employed under certain circumstances as a legalistic tool by which to cut through the corporate facade in order to avoid an apparent unjust result. See Inn Operations, Inc. v. River Hills Motor Inn Co., Iowa, 152 N.W.2d 808, 815-816.

Incidentally, the factors ordinarily essential to its application are set forth in Frank McCleary Cattle Company v. Sewell, 73 Nev. 279, 317 P.2d 957, 959.

See also Fisser v. International Bank, (2 Cir.), 282 F.2d 231, 234; Plunkett v. Nationwide Mutual Insurance Company, 150 Conn. 203, 187 A.2d 754, 756; State ex rel. Monarch Fire Ins. Co. v. Holmes, 113 Mont. 303, 124 P.2d 994, 996; Baer v. Amos J. Walker, Inc., Nev., 452 P.2d 916; Lowendahl v. Baltimore & O. R. Co., 247 App.Div. 144, 287 N.Y.Supp. 62, 75-76; and Black's Law Dictionary, Revised Fourth Ed., page 103.

So far as we have been able to ascertain, however, no court has ever held the alter ego concept may be applied merely to preclude application of a limitation act under the guise of an unjust result.

IV. As aforesaid, the constitution and by-laws of the Sovereign and those of Iowa Grand Lodge, to which all members of Lodge No. 18 subscribed, direct that any property acquired by it be held and used only for purposes of the Order.

By the same process Lodge No. 18 was specifically precluded from disposing of property acquired so as to defeat reversionary rights vested in the Iowa Grand Lodge.

Because of its ultimate beneficial interest, appellant argues there was created an express trust under which Lodge No. 18 became the trustee and Iowa Grand Lodge the beneficiary or cestui que trust.

It is not to us, however, so apparent that under the foregoing chartering and membership arrangement an express trust, as such, was created. Rather it would appear there was thus established, at best, an implied trust. See in this regard Pap v. Pap, 247 Iowa 371, 381, 73 N.W.2d 742; Bogert on Trusts and Trustees, Second Ed., section 451; and 89 C.J.S. Trusts § 12, page 724.

But in view of the fact that, as disclosed by these cited authorities, an implied trust is usually deemed to be a form of express trust, the distinction is in this case of little consequence.

So we proceed upon the premise there existed an implied trust relationship between Lodge No. 18 and Iowa Grand Lodge.

Resultantly, as already stated, the real question to be resolved is whether the challenged conveyance of valuable property by the trustee lodge, to the Association, constituted a repudiation of the trust which

permits application of the limitation acts here invoked by defendants.

■ It must at the outset be conceded that where there exists an express or implied trust, a limitation act begins to run in the trustee's favor only when there has been an open and known repudiation or disavowal of the trust by the trustee. See Pap v. Pap, supra, loc. cit., 247 Iowa 382–383, 73 N.W.2d 742; In re Estate of McElrath, 238 Iowa 1239, 1250–1251, 30 N.W.2d 146; 54 C.J.S. Limitations of Actions § 182(b), page 169; and 34 Am. Jur., Limitation of Actions, section 175, page 140.

V. Ordinarily, "Repudiation consists in 'such words or actions by a contracting party as indicate that he is not going to perform his contract in the future.' (Authorities cited). It is conduct which shows a fixed intention to abandon, renounce, and refuse to perform the contract. (Authorities cited)." Continental Casualty Company v. Boerger, Tex.Civ. App., 389 S.W.2d 566, 568.

On the same subject 54 C.J.S. Limitations of Actions § 182(3), pages 171–172, states: "In order to constitute a repudiation there must be something said or done by the trustee in open contravention of the terms of the trust, and of such character that the relations of the parties will become and continue hostile. The declarations of repudiation must be continuous and consistent, and the circumstances attending the adverse claim or user must be such that the trustee is liable to be sued. * * *.

"* * * there need be no formal renunciation of the trust if the acts of the trustee are equivalent to a repudiation and the cestui has knowledge thereof; and a sale by a trustee for his own interest, or a use of a trust fund by the trustee for his own benefit, or in any way clearly inconsistent with the trust, and conclusively evincing a repudiation, is sufficient." (Emphasis supplied).

In that vein we refer first to this significant statement in Bogert on Trusts and Trustees, Second Ed., section 951: "A conveyance by the trustee in violation of the trust is clearly a repudiation of it." Authorities cited in support thereof are Adams v. Holden, 111 Iowa 54, 82 N.W. 468, and Ewalt v. Luna, Tex.Civ.App., 316 S.W.2d 804. See also Annos. 54 A.L.R.2d 13, 127.

■ Here again it is essential to note, the trust existing between Lodge No. 18 and the Iowa Grand Lodge required, inter alia, no property acquired by the trustee lodge be disposed of for the purpose of depriving the contractual beneficiary of its dedicated usage and reversionary rights.

Without question Lodge No. 18 did just that. First it dispossessed itself of trust impressed property, at once known to the beneficiary, for the then avowed purpose of evading the trust obligations. This is clearly revealed by the fact that as heretofore stated, the conveyance was effected in order that the Association could manage the property, *and* protect it from any obligations of Lodge No. 18. Also, as disclosed by the Association's November 1948 amendment to its corporate articles, the reversionary rights of the beneficiary were specifically renounced by providing that on dissolution of that body all assets be distributed among its members.

Furthermore if, as appellant contends, the Association was the alter ego of Lodge No. 18, then the Association's action, in so amending its articles of incorporation, was in fact the act of Lodge No. 18. We can conceive of no demeanor or conduct on the part of a trustee which would more nearly serve to disavow, renounce and repudiate such a trust as that involved in this case.

Above all else it is apparent Iowa Grand Lodge, by its immediate demand for reconveyance of the property to Lodge No. 18 by the Association, viewed the actions of

its subordinate body as nothing other than hostile conduct clearly designed to evade, preclude and destroy any reversionary rights then held by the Iowa Grand Lodge, i. e., it deemed the conveyance an open repudiation of the trust. In the face of this situation Iowa Grand Lodge cannot now be allowed to effectively adopt a diametrically opposite position. See Annos. 54 A.L.R.2d 13, 50.

Consequently it is evident, (1) in 1948 Lodge No. 18 repudiated any trust, express or implied, then existing between it and Iowa Grand Lodge; (2) such repudiation was open, known, continuous, or chargeable to the knowledge of Iowa Grand Lodge; and (3) any right of action on the part of the Iowa Grand Lodge by reason of such repudiation then matured placing the statute of limitations in motion.

This in turn means that even if the alter ego principle was here applicable, Lodge No. 18, by a conveyance to the Association of the subject property, at once known to the Iowa Grand Lodge, openly evinced a continuing hostile disavowal, renunciation, disclaimer, and repudiation of any trust agreement then existing.

Pursuing this matter one more step, if the Association was in fact the alter ego of Lodge No. 18, then the conveyance effected by it, as trustee, was a conveyance to itself under the guise of a separate corporate entity. Resultantly, In re Estate of Hellman, 221 Iowa 552, 266 N.W. 36, would be applicable and controlling. There it was claimed by plaintiffs that under will of Anna C. Mellman, a precatory trust was created in their favor, and Frank C. Hellman, executor, held designated real and personal property as a trustee. He, however, distributed the trust assets to himself personally and died testate September 6, 1933, leaving all his holdings to persons other than plaintiff trust beneficiaries. This court ultimately held a trust was actually established, but at pages 560–561, 221 Iowa, at p. 40, 266 N.W., said: *"Frank Hellman distributed the entire residuary estate to himself individually, assigned the mortgages to himself individually, and the assignments thereof were recorded.* Of all this appellants had personal knowledge, and there is no evidence in the record showing that Frank Hellman ever by act, word, or conduct did aught to indicate that he was holding the said property or any portion thereof as trustee. *That his conduct and actions amounted to a repudiation of said trust would seem clear.* It further appears from the record that these appellants, with full knowledge of the facts, never at any time challenged Hellman's right to hold said property in his individual capacity, prior to the death of Frank Hellman. The general rule, of course, is that length of time is no bar to a trust clearly established, and the statute of limitation is not applicable, because the possession of the trustee is presumed to be the possession of his cestui que trust. But the rule is different where there is a repudiation by the trustee of the trust relationship and an avowed, open, notorious claim of the trustee in relation to the subject-matter of the trust adverse to the interests of the cestui que trust, of which said beneficiaries have notice and knowledge. *Under such circumstances, the possession of the trustee of the trust property becomes hostile, and the statute of limitations is set in motion."* (Emphasis supplied). See also Anderson v. Telsrow, 237 Iowa 568, 579, 21 N.W.2d 781.

VI. Looking now to the other side of the coin, if the Association was *not* the alter ego of Lodge No. 18, then the subject conveyance by the latter served to create, in the hands of the Association, a constructive trust making it a trustee ex maleficio of the property involved. Thus, as to the Association we would now be confronted, not with the trust position once occupied by Lodge No. 18, but rather with that impressed upon the Association by application of equitable principles. This

would mean any implied trust as between Iowa Grand Lodge and Lodge No. 18 became a dry trust, with no further benefits flowing therefrom to the beneficiary. In support hereof see In re Guardianship of Munsell, 239 Iowa 307, 321, 31 N.W.2d 360, and In re Estate of McElrath, 238 Iowa 1239, 1250–1252, 30 N.W.2d 146.

The foregoing view is significantly aided by Loschen v. Clark, 256 Iowa 413, 419–420, 127 N.W.2d 600, 603, where this court said: "With reference to constructive trusts fraud may be present, but in many cases fraud is not present. We made a rather comprehensive but concise definition of a constructive trust in Homolka v. Drahos, 247 Iowa 525, 529, 74 N.W.2d 589, when we said: 'A constructive trust is an appropriate remedy against unjust enrichment, whether initially tainted with fraud or not. * * *.'

"A good general definition as to constructive trusts appears in 89 C.J.S. Trusts § 139a: 'A constructive trust is a creature of equity, defined * * * as a remedial device by which the holder of legal title is held to be a trustee for the benefit of another who in good conscience is entitled to the beneficial interest. So, the doctrine of constructive trust is an instrument of equity for the maintenance of justice, good faith, and good conscience, resting on a sound public policy requiring that the law should not become the instrument of designing persons to be used for the purpose of fraud. * * * The feature which distinguishes constructive trusts from express trusts and resulting trusts is that the former do not arise by virtue of agreement or intention, either actual or implied, but by operation of law, or, more accurately, by construction of the court, and that result is reached in such instances regardless of, and ordinarily contrary to, any intention to create a trust. Such trusts are entirely in invitum, and are forced on the conscience of the trustee in favor of the person defrauded, for the purpose of working out right and justice and preventing fraud, or, as frequently stated, for the purpose of preventing unjust enrichment.'

"A good analysis appears in 26 R.C.L., Trusts, section 78: 'Constructive trusts may be divided into three classes; first, trusts that arise from actual fraud; second, trusts that arise from constructive fraud; third, trusts that arise from some equitable principle independent of the existence of any fraud.'

"54 Am.Jur., Trusts, section 219, states: 'A constructive trust is substantially an appropriate remedy against unjust enrichment. It is raised by equity in respect of property which has been acquired by fraud, or where, although acquired originally without fraud, it is against equity that it should be retained by the person holding it.'" See also Ehlinger v. Ehlinger, 253 Iowa 187, 191, 111 N.W.2d 656; Wadlington v. Edwards, Fla., 92 So.2d 629, 631; 89 C.J.S. Trusts § 15, page 726; and Restatement, Trusts, section 1, comment e.

As aforesaid Iowa Grand Lodge had actual knowledge of the subject 1948 conveyance when made, and at least constructive notice of all attendant actions taken. By the same token the statute of limitations then commenced to run as to the Association, since no repudiation of a constructive trust is necessary to mature a right of action and set the statute in motion. In support hereof see Watkins v. Johnson, 234 Ark. 929, 356 S.W.2d 655, 657; Wadlington v. Edwards, supra, loc. cit., 92 So.2d 631–632; Bend v. Marsh, 145 Neb. 780, 18 N.W.2d 106, 111; Geller v. Schulman, Sup., 110 N.Y.S.2d 862, 865, Aff'd, 280 App.Div. 933, 115 N.Y.S.2d 824; Thames v. Holcomb, 230 Miss. 387, 92 So.2d 548, 552; Scott on Trusts, Third Ed., section 481.1; 54 C.J.S. Limitations of Actions § 179(c) (1), page 154; 34 Am. Jur., Limitation of Actions, section 108, page 88; and Annos. 55 A.L.R.2d 220, 260–292.

Consequently, if the Association was not the alter ego of Lodge No. 18, it would still remain, for all the reasons heretofore set forth which need not be now repeated, the conveyance of property to the former by the latter was a continuing open and hostile renunciation, disclaimer, disavowal and repudiation of any existing trust between Lodge No. 18 and Iowa Grand Lodge. This conclusion is accorded more than minimal support by Clark v. Van Loon, 108 Iowa 250, 79 N.W. 88. In that case the petition filed by plaintiff R. B. Clark, alleged he owned a tract of land, but record title was in a brother, J. B. Clark. Defendant James C. Van Loon held two notes indorsed by plaintiff on which he had guaranteed payment. It was agreed by plaintiff and defendant that plaintiff would cause the land held by his brother to be conveyed to defendant as security for payment of the obligation. Among other things defendant was not to sell it to anyone else, and a conveyance by defendant to plaintiff would be effected upon payment by him of the amount for which the property was so held in trust. June 13, 1887, defendant sold the tract to A. W. Van Loon. In response to plaintiff's action, defendant invoked the statute of limitations. Trial court directed a verdict for defendant at close of plaintiff's evidence. On appeal this court affirmed, and in so doing stated, loc. cit., 108 Iowa 253, 79 N.W. 89: "The evidence tends strongly to sustain the averments of the petition. It is shown, however, that the deed of the defendant to Van Loon purported to be an absolute conveyance of the land, and that it was recorded on the second day of July, 1887. This action was commenced in August, 1895,—about fifteen years after the alleged agreement with the defendant and the conveyance to her were made, and a little more than eight years after her deed to Van Loon was recorded. *The execution of the last named deed was, in effect, a disavowal of the alleged trust for which the title to the land was held, and could not have been otherwise understood, and*

*the statute of limitations then commenced to run * * *.*" (Emphasis supplied).

In any event plaintiff's action against defendant Association is barred because, as disclosed in Restatement, Second, Trusts, section 327, comment g: " * * * if a third person wrongfully takes possession of land or chattels held in trust and remains in adverse possession for the period of the Statute of Limitations, he cannot be compelled by the trustee or by the beneficiary to surrender the property."

VII. Finally, as stated by Jesse E. Marshall, Iowa Title Opinions and Standards, section 1.7, page 27: "A limitation act, * * * is based on the theory that property rights should be definite and certain, and that persons should be barred from asserting rights which have been too long neglected. Limitation acts are statutes of repose and favor those who actively assert rather than those who sleep on their rights."

So it remains, whether the Association was or was not the alter ego of Lodge No. 18, the subject conveyance by the latter to the former, was a continuing, open and known repudiation of any trust existing as between Lodge No. 18 and Iowa Grand Lodge.

It is to us evident and we now hold, Code sections 614.1(6), 614.14 or 614.17 serve to effectively bar plaintiff's right to the relief sought, declaratory or otherwise, as against either or both defendants. See 26 C.J.S. Declaratory Judgments § 108(b), page 241, and 22 Am.Jur.2d, Declaratory Judgments, section 78, page 940.

In fact any other holding would only favor plaintiff, Iowa Grand Lodge, for sleeping on its rights, defeat the purpose of our limitation statutes, and create for title examiners needless recurring troublesome problems.

Affirmed.

All Justices concur, except LARSON, J., who dissents, and REES and UHLEN-HOPP, JJ., who take no part.

LARSON, Justice (dissenting):

I respectfully dissent from the majority decision herein, not only because it reaches the unconscionable result of rewarding the wrongdoers and defeating the object and purpose of an express trust established for the use and benefit of the members of the Odd Fellowship and their charitable purposes, but because it ignores the nature of the trust and permits repudiation of it without a proper and necessary showing of notice to the real beneficiaries.

First of all, the defendants' plea of the statute of limitations is an affirmative defense and the burden of proof is upon the pleader. Armstrong v. City of Des Moines, 232 Iowa 711, 715, 6 N.W.2d 287, 289; In re Estate of Fisher, 128 Iowa 18, 21, 102 N.W. 797, 798; 54 C.J.S. Limitations of Actions § 388, p. 529; Solon Lodge No. 9 v. Ionic Lodge Free A. & A. M., 247 N.C. 310, 101 S.E.2d 8, and citations; 34 Am.Jur., Limitation of Actions, § 450.

This court has not viewed the application of the statute of limitations with favor in trust matters. In Boehnke v. Roenfanz, 246 Iowa 240, 247, 67 N.W.2d 585, 590, we recognized the rule that the statute of limitations is to be favored as a statute of repose but said it "has never been given application to voluntary trusts, since to do so would be to render such statute not a beneficent statute of repose but a vile instrument of wrong in relation to those who are standing and continuing in voluntarily assumed confidential relations to each other." See 54 Am.Jur., Trusts § 83; 90 C.J.S. Trusts § 387. We also stated in Pap v. Pap, 247 Iowa 371, 382, 73 N.W.2d 742, 748, cited by the majority: "It is elementary that as between the trustee and cestui que trust of an express trust, statutes of limitations have no application. Possession by the trustee of trust property is, in law, possession of the cestui que trust. As against an express and continuing trust, time does

not run until repudiation or adverse possession by the trustee and knowledge or notice thereof to the cestui." Also see Boehnke v. Roenfanz, supra, 246 Iowa 240, 246, 67 N.W.2d 585, 590. Many authorities are cited for this proposition, including Bogert on Trusts and Trustees, § 951, pp. 200–202.

In Howes v. Sutton, 221 Iowa 1326, 1330, 268 N.W. 164, 166, this court stated: "It is an elemental principle of law that as between trustee and cestui que trust, in the case of an express trust, the statute of limitations has no application, and no length of time is a bar. Against an express and continuing trust time does not run until repudiation or adverse possession by the trustee and *knowledge* thereof on the part of the cestui." (Emphasis supplied.) Also see Long v. Valleau, 87 Iowa 675, 55 N.W. 31, 56 N.W. 748.

Although the majority recognizes the trust herein as an express or resulting trust, it fails to properly identify the cestui or beneficiaries of the trust, simply referring to the beneficiary as the Grand Lodge. Without question, the beneficiary of the trust here is a class, the members of the Order of Odd Fellows of Iowa, and the trust property use is clearly designated by provisions of the constitution and by-laws of the Order. See 54 Am.Jur., Trusts, §§ 140 and 142. The Grand Lodge is not listed as a beneficiary but as a reversionary trustee thereunder.

Insofar as the record discloses, the prescribed uses and benefits of the trust property have not been disturbed by the transfer of title to another, the Association, also bound by the terms of the trust, and although by various amendments to its corporate articles the Association seems to express an intent in futuro to use the property adverse to the established trust, that event has not yet occurred. I, therefore, maintain the express or resulting trust involved has not been disturbed and no cause of action in favor of the beneficiaries has yet occurred to start the statute to run in the Association's favor.

Furthermore, I find no proper notice of repudiation was ever given to the cestui as a class. How were they notified of the defendant's intent to hold the property as unfriendly to the members of the Odd Fellows? In his Law of Trusts, 4th Ed., Mr. Bogert states in Ch. 20, § 170: "It is well settled that in express trusts, and as between beneficiary and trustee, the Statute of Limitations runs from the date when the beneficiary knows or should by the use of ordinary care have known of a breach or a repudiation of the trust by the trustee."

Mr. Bogert further points out that, even if the trust in the hands of another such as the Association here is called a resulting trust, most courts have taken the position that the trustee's normal position is that of a holder in subordination to the rights of the beneficiary, and that, from the date of the event which makes possible the trust until the contrary appears, he should be regarded as holding for the beneficiary and not adverse to him.

Bogert also recognized that the statute of limitations does not begin to run against the rights of the beneficiaries of a resulting trust on the theory of an adverse holding from the date the trustee obtains title, but, on the theory of a presumed friendly holding, only begins to run from the date of a repudiation by the resulting trustee or from the time a contrary intent is brought to the attention of the beneficiaries. He states the case then resembles an express trust of a continuing nature and is subject to the statute of limitations in a like manner. Thus, it was necessary here for the Association to show a repudiation which was brought to the attention of the membership of the Odd Fellows, and without question in that burden it failed.

In any event, it is clear that if the trustee or resulting trustee has expressly recognized the trust or conferred benefits on the cestui under it, as certainly appears herein, there is no running of the statute, and to start the statute thereafter the law requires a showing that the trustee has openly and clearly declined to recognize its obligations thereunder. In other words, only where the trustee has claimed the property and its use for himself, and where the beneficiary knows or has an opportunity to know of this conduct, is there a cause of action which should be affected by the statute of limitations. See Treager v. Friedman, 79 Cal.App.2d 151, 179 P.2d 387. In 34 Am.Jur., Limitation of Actions, §§ 175–177, it is stated the trustee in such cases must show "a plain, strong, and unequivocal renunciation" to claim the benefits of the statute. A showing that the Grand Lodge officers were aware of the facts here would not comply with this requirement or tend to prove that the membership of the Odd Fellows Order was reasonably made aware of an unequivocal renunciation of the trust.

In fact, I find no showing that the real beneficiaries were aware of a repudiation. The Association's holding of this property until now was friendly.

The applicable rule in this jurisdiction as to when a statute of limitations is set in operation in such charitable trust matters as we have here before us is well stated in England v. Winslow, 196 Cal. 260, 272, 237 P. 542, 547, where it is said: "The *only* way in which the trustee of an express or voluntary trust can set the statute of limitations in operation in his favor with respect to it or its properties in his hands is by a distinct *act* of repudiation amounting to a denial of its existence, and no mere tacit failure of the trustee to perform his duty in respect to such trust could or should be held to amount to a repudiation of it so as to set the statute of limitations in motion in his favor * * *." (Emphasis supplied.) It seems clear to me that neither Lodge No. 18 nor the Association, as voluntary trustees of this property, ever committed any distinct act of repudiation which amounted to a denial of the existence of the trust, or that they in any manner adequately brought such a claimed repudiation to the attention of the real beneficiaries of the trust.

As stated, the majority seems to avoid the adequate notice requirement by simply stating the Grand Lodge was the beneficiary and that it was made aware of the claimed repudiation in 1948. It may be that, had the Grand Lodge been the real beneficiary, the acts and claims of the local order and the Association which was brought to its attention might have constituted due notice to that body. But we are not told how such a notice to the Grand Lodge officers would constitute due and adequate repudiation notice to the Order membership. In fact, appellees do not contend a repudiation notice to the Grand Lodge officers was adequate notice to the membership of the Order, and I would hold otherwise under these circumstances.

As I view this matter, the defendants, Lodge No. 18 and the Association, held the lodge property as voluntary trustees for the prescribed *use and benefit* of all the members of the Odd Fellows. The property in question *was* so used and its use had not changed subsequent to the transfer of title to the Association. Indeed, there had been no effort by the Association to use the property for any other purpose than that expressed in the trust agreement. Its holding, therefore, must be considered friendly to the trust.

Black's Law Dictionary, Revised Fourth Edition, defines a beneficiary as "One for whose benefit a trust is created; a cestui que trust. * * * A person having the enjoyment of property of which a trustee, executor, etc., has the legal possession. * * *" A reversionary interest on the other hand is defined as "A right to the future enjoyment of property, at present in the possession or occupation of another." Clearly, in the case at bar the individual members as well as the local lodges agreed, when joining the Order, to be bound by the rules of the Order, which among other things provide that revenue from lodge property shall be used for its upkeep, paying debts and honoring obligations of the local lodge, and for various philanthropic manifestations of Odd Fellowship such as visiting the sick, relieving the distressed, and educating poor orphans.

The reversionary interest of the Grand Lodge, in the event a local lodge should become defunct, requires it to distribute the trust property as follows: (1) to meet the obligations of the extinct local lodge; (2) to provide that funds be set aside to carry out existing programs of a charitable nature which the local lodge may have been sponsoring; (3) to then use any surplus for the operation of the home at Mason City or for the purposes of Odd Fellowship.

The formation of the beneficial association by a number of the local lodge members and the transfer of the legal title to real property to them by the lodge alone did not affect the intended beneficial use thereof. The sole purpose of the transfer of title of the lodge building, it appears, was to protect revenue generated by the building rentals for the upkeep of the building and not to commingle it with other funds for social uses. Until 1965 the trustees had in no way interfered with that express use of the trust, which I contend would have been necessary to create a constructive trust or set the statute of limitations in motion.

The members of Lodge No. 18 and the Association individually and collectively had voluntarily created the express trust, and any amount of juggling, transferring, or manipulating of the corporate articles, short of a *use* adverse to the purposes of the trust, should not be considered an effective repudiation of the trusteeship. Such shenanigans should not be rewarded.

Finally, this is an action brought by the Grand Lodge as an interested party seeking to establish and declare that this property, the legal title to which had been transferred without its approval, was subject to the trust and had not been repudiated by the efforts of some rebellious members. I would declare the property remained trust property held by defendant Association for the charitable uses established by the express trust agreement and subscribed to by all the parties.