# IN THE COURT OF APPEALS OF IOWA

No. 16-1476
Filed July 6, 2017


THE GRAND LODGE, KNIGHTS OF PHTHIAS OF IOWA,
 d/b/a GRAND LODGE, KNIGHTS OF PYTHIAS OF
THE DOMAIN OF IOWA,
        Plaintiff-Appellee,

vs.

STAR OF THE WEST LODGE NO. 1, STAR OF
THE WEST COMPANY, DONN LANG, and MARK LANG,
        Defendants-Appellants.
_____


        Appeal from the Iowa District Court for Linn County, Kevin McKeever,

Judge.


        Defendants appeal the district court decision finding plaintiff was entitled

to the proceeds from the sale of property by Star of the West Company.

**AFFIRMED.**


        Larry J. Thorson of Ackley, Kopecky & Kingery, L.L.P., Cedar Rapids, for

appellants.

        Mark A. Roeder of Roeder Law Office, Manchester, for appellee.



        Considered by Mullins, P.J., and Bower and McDonald, JJ.

**BOWER, Judge.**

Defendants appeal the district court decision finding The Grand Lodge, Knights of Pythias of Iowa (Grand Lodge) was entitled to the proceeds from the sale of property by Star of the West Company (Star of the West). We find a decision of the Grand Tribunal, which is part of the Grand Lodge, is binding on Star of the West only if Star of the West is an ancillary entity of Star of the West Lodge No. 1 (Lodge No. 1). Under the rules of the organizations, the property of an ancillary entity, such as Star of the West, reverts to the Grand Lodge if a subordinate lodge, such as Lodge No. 1, ceases to exist. We conclude the district court properly determined the property of Lodge No. 1 and Star of the West should be turned over to the Grand Lodge.

I.     **Background Facts & Proceedings**

The Supreme Lodge Knights of Pythias is a national charitable fraternal organization, governed by Supreme Statutes. The Grand Lodge is an associated state-wide organization, governed by its own Grand Statutes and the Supreme Statutes. Lodge No. 1 was chartered by the Grand Lodge in 1887. As a subordinate lodge, Lodge No. 1 is subject to the Supreme Statutes and the Grand Statutes.

On July 3, 1911, members of Lodge No. 1 created Star of the West, a non-profit corporation. The articles of incorporation stated all members of Lodge No. 1 constituted the membership of Star of the West. If the charter of Lodge No. 1 was suspended, Star of the West would continue, with the membership consisting of the members of Lodge No. 1 at the time of the suspension. The purpose of Star of the West was to acquire and hold property for its own use and

the use of Lodge No. 1. Star of the West had the authority to purchase, encumber, and sell investments, real estate, and personal property. Star of the West owned the property Lodge No. 1 used for meetings, and Lodge No. 1 paid rent to Star of the West. Other organizations also paid rent to Star of the West for the use of the building. Star of the West sold this property on February 4, 2010, for $170,000.

Lodge No. 1 did not account for the proceeds from the sale in its annual report to the Grand Lodge. The Grand Lodge requested a complete report concerning the sale of the real estate. Lodge No. 1 refused, stating Star of the West had owned the property and it was an independent corporation, so the Grand Lodge was not entitled to the information. The Grand Lodge engaged in internal proceedings, including a decision by the Grand Lodge's adjudicatory body, the Grand Tribunal. The Grand Lodge suspended the charter for Lodge No. 1 on February 24, 2012. The Grand Lodge then stated under the terms of the Grand Statutes, upon the suspension of Lodge No. 1, Lodge No. 1 was required to deliver to the Grand Lodge all of its property, including the property of Star of the West. Lodge No. 1 and Star of the West disagreed with the claims of the Grand Lodge.

On July 25, 2012, the Grand Lodge filed a petition in equity against Lodge No. 1, Star of the West, and two officers of Lodge No. 1 (referred to collectively as defendants), requesting an order confirming the suspension of Lodge No. 1 and stating all property of Lodge No. 1, including the property of Star of the West, reverted to the Grand Lodge based on the internal rules governing the

relationship between the parties. The Grand Lodge filed two motions for summary judgment, which were denied by the district court.

A hearing was held on March 15, 2016. The district court found Star of the West was the alter ego of Lodge No. 1, stating "The assets of Star of the West Company were in effect the assets of Star of the West Lodge No. 1." The court concluded Star of the West was under the control of Lodge No. 1, and, since Lodge No. 1 was subject to the rules and regulations of the Grand Lodge, so also was Star of the West. The court determined under these rules and regulations, after Lodge No. 1 was suspended by the Grand Lodge, Lodge No. 1 and Star of the West were required to turn all property over to the Grand Lodge. Defendants appeal the decision of the district court.

## II.    Standard of Review

The Grand Lodge filed this case as a petition in equity, and therefore, our review is de novo. *See* Iowa R. App. P. 6.907. In equity cases, we give weight to the fact findings of the district court, especially when considering the credibility of witnesses, but are not bound by the court's findings. Iowa R. App. P. 6.904(3)(g).

## III.    Grand Tribunal

The Grand Lodge claims the Grand Tribunal of the Grand Lodge already determined Lodge No. 1 should be suspended and all property of Lodge No. 1 and Star of the West should revert to the Grand Lodge. It states Lodge No. 1 could have appealed to the Supreme Tribunal of the Supreme Lodge, but it did not do so, and it is therefore bound by the decision of the Grand Tribunal.

The relationship between the Grand Lodge and Lodge No. 1 is governed by the Grand Statutes, which include provisions for decisions on matters concerning the relationship between the entities by the Grand Tribunal. The decision of the Grand Tribunal is binding on Star of the West, however, only if Star of the West is an ancillary entity of Lodge No. 1. The Grand Lodge and the Grand Tribunal would have no jurisdiction over Star of the West if, in fact, it is an independent corporation.

## IV.    Merits

Defendants claim the district court improperly determined Star of the West should turn over the proceeds from the sale of real property to the Grand Lodge. They state Star of the West was an independent corporation, noting Lodge No. 1 and Star of the West did not commingle their assets and the two entities had separate meetings. Defendants also point out Star of the West charged Lodge No. 1 rent to use the building. In addition, other organizations rented the building from Star of the West.

"[T]he charter of a subordinate lodge and the constitution and by-laws of the parent organization constitute a contract between the two." *Iowa Ass'n of the Blind v. Nemmers*, 339 N.W.2d 835, 840 (Iowa Ct. App. 1983). "The rights and powers of the officers and members of the associations or lodges, superior or subordinate, are regulated by their articles of associations, or constitution and by-laws, which constitute the contract of the members with each other and by the provisions of which they undertake to be bound." *Grand Lodge of Iowa of Indep. Order of Odd Fellows v. Osceola Lodge No. 18*, 178 N.W.2d 362, 367 (Iowa 1970). We previously determined when a state group became affiliated with a

national group, the state group agreed to be bound by the national group's constitution and policies. *See Iowa Ass'n of the Blind*, 339 N.W.2d at 841.

Our supreme court has also stated:

> Provisions in the constitution, by-laws and charters of an incorporated charitable fraternal order, subscribed to by the members thereof, providing that assets of a subordinate body be used for purposes of the Order, and that upon dissolution of the subordinate body any property remaining be transferred to its superior for such uses are not, per se, void and unenforceable absent specific legislation to the contrary, or against public policy.

*Grand Lodge of Iowa*, 178 N.W.2d at 366. The court found a covenant providing a state lodge would have a reversionary interest in any property acquired by a local lodge was "in no way against public policy." *Id.* at 368.

In provisions addressing the property of subordinate lodges, the Supreme Statutes provide:

> Should the lodge, from any cause, cease to exist under the laws of the Order, its funds, assets and property, whether general, special or held in trust for any purpose, or *by an ancillary entity created primarily to receive assets of such lodge*, and all its other assets and property shall immediately revert to the Grand Lodge or Supreme Lodge having jurisdiction, and for that purpose, the Grand Chancellor or the Supreme Chancellor, as the case may be, is hereby constituted and appointed as the agent and attorney in fact of such subordinate lodge for the purpose of transferring, conveying and delivering to such Grand Lodge or Supreme Lodge such funds, assets and property.

(Emphasis added). In addition, the Grand Statutes state, "When a lodge is suspended, or its warrant or charter arrested, the warrant or charter, its books, jewels, funds and all other property and effects at once revert to the Grand Lodge."

The Articles of Incorporation for Star of the West stated:

> The general nature of the business of this Corporation shall be to acquire and hold for its own use and for the use of Star of the West Lodge No. 1, Knights of Pythias of Iowa, and for the purpose of investment, real estate, and personal property, and to sell, exchange, and deal in real estate and personal property.

We determine Star of the West was an ancillary entity created primarily to receive the assets of Lodge No. 1. There was no evidence Star of the West held any property other than the building used by Lodge No. 1 for its meetings, although Star of the West rented the building to other organizations in addition to Lodge No. 1.

The Supreme Statutes and Grand Statutes are binding on Lodge No. 1. *See id.* at 367 (noting the by-laws of a charitable fraternal organization are binding on a subordinate lodge). Under these rules, the property of an ancillary entity, such as Star of the West, reverts to the Grand Lodge if a subordinate lodge, such as Lodge No. 1, ceases to exist. We conclude the district court properly determined the property of Lodge No. 1 and Star of the West should be turned over to the Grand Lodge.[1]

We affirm the decision of the district court.

**AFFIRMED.**

---

[1] Based on our finding the specific language of the Supreme Statutes and Grand Statutes require the property of Star of the West to be turned over to the Grand Lodge, we have not addressed the separate theory Star of the West is the alter ego of Lodge No. 1. *See Grand Lodge of Penn. Indep. Order of Odd Fellows v. Van Camp Lodge No. 140*, 479 A.2d 544, 548 (Penn. 1984) (finding an associated corporation to a subordinate lodge was the alter ego of the subordinate lodge and under the rules of the organization the corporation's property reverted to the state organization); *Grand Lodge*, 178 N.W.2d at 368 (noting the issue of whether a corporation associated with a subordinate lodge was the alter ego of the subordinate lodge did not need to be resolved based on the posture of the case).