GRAND LODGE OF MASSACHUSETTS LOYAL ORANGE INSTI-
TUTION *vs.* WILLIAM SNOW & others.

Middlesex.   December 5, 1928. — March 14, 1929.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Corporation,* Name, Fraternal.   *Voluntary Association.   Lodge.   Equity Jurisdiction,* To enjoin use of corporate name.   *Name.   Equity Pleading and Practice,* Master: exceptions to report.

A master, who heard a suit in which a Massachusetts corporation, bearing a name signifying that it was the Supreme Lodge in Massachusetts of a national secret fraternal society, with a constitution and by-laws organized on the lodge system and with international affiliations, sought to enjoin certain individuals from using in Massachusetts the plaintiff's corporate name and from representing themselves to be officers of the corporation, found in substance that a member of a committee, appointed to obtain a corporate charter by a voluntary organization of the order, which had existed in this Commonwealth and held a charter from the Supreme Grand Lodge of the United States, was one of the incorporators of the plaintiff and had testified that he presented the corporate charter to the State Grand Lodge at a regular meeting and that the lodge voted to accept and adopt it; but that there was no evidence of a recorded vote by the voluntary organization transferring its possessions to the corporation or undertaking to dissolve itself as a voluntary body, nor evidence that the Supreme Grand Lodge took any action consenting to the substitution of the corporation for the voluntary State Grand Lodge; that separate meetings of the corporation and of the voluntary organization were held, that officers of each were elected, and that such records as existed were among the proceedings of the voluntary association; that, with some immaterial exceptions, subordinate lodges "have secured their charters from the Supreme Grand Lodge of the United States, to which they owe allegiance." So far as appeared, the plaintiff held no charter or authority from that source. *Held,* that

(1) The only organization that, at the time of the plaintiff's incorporation, had a right to its name was the voluntary organization, which continued thereafter to function;

(2) The plaintiff did not by the mere act of incorporation gain the exclusive right to the use of the name of the voluntary association it was organized to aid, and there was not shown any action of the voluntary body conferring upon it such exclusive right;

(3) The plaintiff, so far as the defendants were concerned, had a right to continue to use its name even though it did not adhere to the tenets of the national association to which the defendants owed allegiance;

(4) Although the plaintiff's existence as an instrumentality of government of the order must depend upon its receiving and retaining a charter from the Supreme Grand Lodge of the order, its corporate charter granted by a State could not be forfeited or suspended by that national body;

(5) A conclusion by the master, to the effect that the plaintiff and the voluntary association represented by the defendants went on side by side and that there was no merger, must stand.

In the suit above described, a contention by the plaintiff was that an assertion by the individual defendants that they properly were acting as officers of a State grand lodge of the order was without warrant because a national body of the order, from which they asserted their State body had derived its authority, had been illegally convened and conducted in 1914. The master found in substance that the national body was duly called to meet in that year in a certain hall in a designated hotel and city; that the laws of the order provided that in the event of inability to act on the part of the supreme grand master and the supreme deputy grand master, the supreme grand lecturer was to assume their duties and be vested with their prerogatives; that the night previous to the meeting the supreme grand master had posted in and about the hotel notices, not properly signed, attested and sealed, changing the hotel room in which the meeting was to take place; that he refused to attend a meeting in the hall previously designated, and that the supreme deputy grand master could not be found; that the supreme grand lecturer, who was of a faction opposed to the supreme grand master and whom the supreme grand master had suspended, but who under the laws of the order still was in office, thereupon presided and the meeting went forward at the place originally designated; that such national body had functioned ever since, and that it had revoked a charter of a State grand lodge in Massachusetts in 1916 and had granted a charter to the defendants' grand lodge in 1925. *Held,* that

(1) The change, attempted by the supreme grand master, of the hall in which the meeting of 1914 was to be held, was ineffectual;

(2) A finding by the master that no member of the supreme grand master's faction presented himself at the hall previously designated for the meeting or was refused admission was a competent fact to be considered;

(3) The refusal or failure of the supreme grand master and supreme deputy grand master to attend the meeting in the room designated in the call justified the master in concluding that they were unable to function as such officers within the meaning of the laws of the order;

(4) A contention by the plaintiff, that under the common law of the order the absence of the charter from the meeting presided over by the supreme grand lecturer rendered that meeting invalid, would put an unreasonable construction upon the requirements of the Supreme Grand Lodge;

(5) A conclusion by the master, to the effect that the legal meeting of the Supreme Grand Lodge was that held in the room designated in the call, and that the attempted change of room was ineffectual, could not be reversed;

(6) In so far as the 1914 convention affected the rights of the parties, the defendant association had established the right to act as the State Grand Lodge in Massachusetts under its charter from the Supreme Grand Lodge, and the plaintiff had failed to establish its right to injunctive relief.

A contention by the plaintiff in the suit above described, that the assertion of title by the defendants was unwarranted because the controversy between the two national factions had been submitted to the international body of the order which had adjudicated favorably to the plaintiff, was *held* not sustained because it appeared that the international body had no jurisdiction to act as arbiter in disputes between grand lodges unless both parties to the dispute submitted it for arbitration, and it appeared that the defendants' faction refused to make such a submission.

At the hearing of the suit above described, it was proper for the master to exclude the record of a suit in a Maryland court in which the plaintiff was not a party or privy and the issues were not identical with those in the case at bar.

Upon the facts found by the master in the suit above described, it was *held*, that the confusion which may have arisen from the right of the plaintiff and of the defendant voluntary association to use and be known by the same name presented no ground for injunctive relief, and that the plaintiff had not maintained the burden of proving that the defendants were unlawfully interfering with any of its rights.

It appearing that the plaintiff corporation had no property and was inactive, injunctive relief asked by the defendants properly was denied in the circumstances.

BILL IN EQUITY, filed in the Superior Court on March 1, 1927, and described in the opinion.

The suit was referred to a master. Material facts found by the master are stated in the opinion. His findings as to the authority of the supreme grand lecturer to preside in 1914 were as follows:

"In the months previous to the time of the convention [of 1914] certain actions had been taken by the grand master in the way of suspending or attempting to suspend some of the grand officers. He had sent notices of suspension to

the supreme grand treasurer and the supreme grand lecturer. These were official documents, properly executed. It was provided, however, in the by-laws of the order at that time among the powers of the supreme grand master: 'If it shall appear that any officer is incompetent, neglects or refuses to perform the duties required by the constitution and laws, or misappropriates any funds belonging to the order, or is guilty of any crime against the laws of the state in which such officer may reside, he may, forthwith, suspend such officer and appoint another brother eligible to fill such office in his stead until an investigation may be had by the proper committee or a special committee, appointed for that purpose.'

"No evidence was presented before me as to the grounds for suspension of these officers: in fact, the only suspension material to this case is that of one Macaw, who was the supreme grand lecturer and who later presided at one of the meetings at Niagara [Falls]. This supreme grand officer had never been tried previous to the convention and no attempt was made to try him, nor was his suspension in good faith. Upon the evidence before me I find that he was, at the time of the call of the supreme grand lodge, the legitimate supreme grand lecturer. In fact, the case was not tried before me upon the theory that Macaw was an improper officer to preside by reason of this suspension. His right to preside was attacked upon other grounds which will be set forth more fully hereinafter."

The seventeenth exception to the master's report was as follows:

"The plaintiff objects to all findings of the master that the Kirkland convention was legally held and that the acts and things done by and under it, including the institution of the defendant voluntary association and the empowering by the latter of the individual defendants to do the acts and things complained of were valid and lawful, and further objects to all findings of the master that the plaintiff corporation, or any of its members are outlawed from the Orange order or are not entitled to the relief prayed for in the bill.

"Cause: The evidence before the master and the findings and recitals of his report are susceptible to only one conclusion, namely, as matter of fact as well of law, the Dunlap convention was the only convention lawfully convened. The plaintiff is recognized by the Dunlap national body as the only lawful Orange organization of State supremacy in Massachusetts, that the defendants, and all of them, are secessionists and outlaws, and not only unqualified but prohibited from using the name Grand Lodge of Massachusetts Loyal Orange Institution or the name, 'Orangemen,' or any other name so similar to the name of the plaintiff corporation as will be calculated to mislead other persons, whether true Orangemen or not, into believing that they, the defendants, have the franchise and powers of the plaintiff corporation."

The plaintiff's exceptions to the master's report were overruled by an interlocutory decree entered by order of *Hammond*, J., by whose order there also was entered the final decree described in the opinion. The defendants appealed from the final decree and the plaintiff appealed from the interlocutory and the final decrees.

*M. M. Johnson*, (*J. W. Black, Jr.*, with him,) for the plaintiff.

*J. H. Morson*, for the defendants.

SANDERSON, J.   These are appeals of both parties from a final decree, and by the plaintiff from an interlocutory decree, of the Superior Court overruling the plaintiff's exceptions to and confirming the master's report. The final decree dismissed the bill and ordered that the cross claims contained in the defendants' answer be dismissed.

The plaintiff is a Massachusetts corporation, and brought the suit against three individual defendants seeking to have them enjoined from using in Massachusetts the plaintiff's corporate name and from representing themselves to be officers of the corporation. There was also a prayer for general relief. The defendants in their answer denied the plaintiff's exclusive right to use its corporate name, setting up their own right to the name because of their official connection with a voluntary association known as the Grand

Lodge of Massachusetts Loyal Orange Institution affiliated with the national association, which has the exclusive right to use that name; and alleging, among other things, that the plaintiff had lost its right by nonrecognition by the national association, and that it was misleading the public by claiming to be the State Grand Lodge of the order. They prayed for cross injunctive relief against the plaintiff to restrain it from functioning as the Grand Orange Lodge of Massachusetts of the Loyal Orange Institution under and subject to the authority of the Supreme Grand Lodge of the United States, and from exercising any of the rights or privileges of the Loyal Orange Institution of America. On motion of the defendants Snow and McLeod, the Grand Orange Lodge of Massachusetts Loyal Orange Institution, a voluntary association with members too numerous to mention, of which they were respectively the grand master and grand secretary, was made party defendant. The defendants in their brief state that they make no claim that the plaintiff is not entitled to use the name by which it was incorporated, and do not contend that it is not entitled to carry out the purposes enumerated in its articles and certificate of incorporation; but that they do contend that the plaintiff is no part of the Loyal Orange Institution, that it is not the grand lodge of Massachusetts, an integral part of the national order, and that the plaintiff cannot intrude itself into the order by adopting a corporate form and a corporate name.

The Loyal Orange Institution is a secret fraternal society, with a constitution and by-laws organized on the lodge system; associated with it is a Supreme Grand Lodge of the United States which issues charters to State or district lodges, called grand lodges, and with the assent of the latter to subordinate lodges within the State; and it has for its primary purpose the protection and defence of the Protestant religion. There is also in the order a body known as the Imperial Council of the World, which meets every three years and is called the Triennial Council, organized to promote unity of sentiment and harmony among Orange orders at home and abroad. The Supreme Grand Lodge of the

United States came to recognize the powers of this council in its appropriate sphere and yielded allegiance to it. Its charter purported to be approved by an officer of the council.

The plaintiff corporation was organized in Massachusetts in 1886. Before its incorporation a voluntary association of the order had existed in this Commonwealth holding a charter from the Supreme Grand Lodge of the United States; and before the granting of any charter to a grand lodge in this State, one or more voluntary associations, formed to accomplish the same purpose, were in existence; but it does not clearly appear whether they continued to function after the granting of a charter by the Supreme Grand Lodge in 1880. A member of a committee appointed to obtain the charter, who was also one of the incorporators, testified that he presented the corporate charter to the State Grand Lodge at a regular meeting and the lodge voted to accept and adopt it. The master found that the word "presented" was indicative only of delivering the charter into the custody of the grand lodge; that no one testified that the corporation owned any of the physical property of the voluntary association in this State; that there was no vote of the voluntary body transferring its possessions to the corporation recorded or undertaking to dissolve itself as a voluntary body; and that there was no evidence that the Supreme Grand Lodge took any action consenting to the substitution of the corporation for the voluntary State Grand Lodge. Separate meetings of the two bodies were held, officers of each were elected, and such records as exist are among the proceedings of the voluntary association. The master found that the corporation has done nothing which might be called corporate business as differing from business of a voluntary fraternal association. Pamphlets in the nature of constitutions and laws of the Grand Lodge of Massachusetts Loyal Orange Institution, issued in four different years after incorporation, were prefaced with the charter of the corporation. In these publications the word "incorporated" was added to the title for the first time in 1916. This last publication was issued after a dissension in the order to which reference will be made, and the constitu-

tion then published had the approval of the so called "Lemmon" faction of the Supreme Grand Lodge of the United States. The provisions in the by-laws of the corporation as to its authority to enact laws for the government of the fraternity, to supervise district lodges, and as to the power of the grand master, were entitled to weight on the issue of merger, but were not controlling.

The purpose of the corporation as shown by its certificate of organization was "to form an association for social improvement, and mutual relief and the establishment of a relief fund for the relief and assistance of sick and disabled members, their widows or orphans and such other persons as might properly become members and other purposes as defined in its constitution and by-laws." No reference is made in the charter to the main purpose for which the order exists, and there is nothing in its constitution or by-laws referring to its recognition as a grand lodge of the order by the Supreme Grand Lodge. The master found that it was formed for the benefit of the order and for the protection of its name, with the idea that the establishment of this corporation might prevent others from legally using the name under which the voluntary association was operating. He also found that, with the exception of certain early lodges, "subordinate lodges have secured their charters from the Supreme Grand Lodge of the United States, to which they owe allegiance." The plaintiff so far as appears holds no such charter or authority from the Supreme Grand Lodge.

The suit involves the use of identical names by the plaintiff and defendant association. It may be assumed that the use of the name by either will to some extent mislead or confuse the public and each has alleged injury to itself from the use of the name by the other; but the case is not controlled by cases like *C. H. Batchelder & Co. Inc.* v. *Batchelder*, 220 Mass. 42, where an individual was granted injunctive relief to prohibit the plaintiff corporation from wrongfully and in violation of the statute making use of the defendant's name in its corporate title.

So far as appears, the only organization having a right at the time of incorporation to the name Grand Lodge of Massa-

chusetts Loyal Orange Institution was the voluntary organization, which continued thereafter to function. *Council of Jewish Women* v. *Boston Section Council of Jewish Women,* 212 Mass. 219, 223, 224. Upon the findings the powers of the plaintiff and its officers were derived solely from the charter under which it was organized. *Canadian Religious Association* v. *Parmenter,* 180 Mass. 415. The corporation did not by the mere act of incorporation gain the exclusive right to the use of the name of the voluntary association it was organized to aid, nor did the action of the voluntary body confer upon it such exclusive right. *Grand Lodge Ancient Order United Workmen* v. *Graham,* 96 Iowa, 592, 608. *Supreme Lodge Knights of Pythias* v. *Improved Order Knights of Pythias,* 113 Mich. 133, 134. *Aiello* v. *Montecalfo,* 21 R. I. 496, 498. If the plaintiff has suffered damage from the identity of its name with that of the voluntary association, the damage is the result of its choice in selecting an existing name. *Grand Lodge Ancient Order United Workmen* v. *Graham, supra.* Upon the findings the plaintiff has a right to continue to use its name even though it does not adhere to the tenets of the national association to which the defendants owe allegiance. *Council of Jewish Women* v. *Boston Section Council of Jewish Women, supra. District Grand Lodge* v. *Jedidjah Lodge,* 65 Md. 236, 244. *Lamphere* v. *Grand Lodge of United Workmen,* 47 Mich. 429, 430. Although the plaintiff's existence as an instrumentality of government of the order must depend upon its receiving and retaining a charter from the Supreme Grand Lodge of the order, its corporate charter granted by a State cannot be forfeited or suspended by that national body. *District Grand Lodge* v. *Jedidjah Lodge, supra. Merrill Lodge* v. *Ellsworth,* 78 Cal. 166. *Vicksburg Lodge* v. *Grand Lodge of Free & Accepted Masons,* 116 Miss. 214.

On the question of merger, the facts are distinguishable from those in *Bancroft* v. *Cook,* 264 Mass. 343, 349, 350. Upon the facts found, the judge could not rule that the voluntary association existing before incorporation had lost its identity and become merged in the corporation. *McFadden* v. *Murphy,* 149 Mass. 341. The master's con-

clusion — to the effect that the two bodies went on side by side and that there was no merger — must stand.   No reversible error appears in the exceptions relating to this issue, numbered one to six inclusive, and they were rightly overruled.

In 1914 a break in the ranks of the national body occurred and since then two rival groups have functioned, each declaring itself to be the true and only legitimate Loyal Orange Institution, one referred to by the master as the "Kirkland" faction and the other as the "Lemmon" faction, from the names of the leaders of the rival trends of thought.   The individual defendants are followers of the "Kirkland" faction and the State Grand Lodge joined as a party defendant is of that faction also.   There are two groups carrying on in Massachusetts, each claiming to be the State Grand Lodge of the Loyal Orange Institution.   One MacKillop is the State grand master of the "Lemmon" group and the defendant Snow holds a similar office in the "Kirkland" group.   The Supreme Grand Lodge of neither faction is a party.

The plaintiff contends that the defendant association gained no right to function as a State Grand Lodge from the charter granted to it in 1925 by the "Kirkland" faction of the Supreme Grand Lodge.   The proceedings at the convention of the Supreme Grand Lodge at Niagara Falls have a material bearing on this contention.   At a convention of that body held in 1912, a vote was passed that the next convention be held at Niagara Falls in 1914, without more definite designation of place or time.   The call for the meeting was issued by the supreme grand master in compliance with the forms prescribed by the laws of the order, and the place designated was the Assembly Hall of the Cataract Hotel, Niagara Falls; the time, August 24, 25 and 26, 1914.

There was some disorder the night before the convention and the grand master attempted to change the room in which the convention should meet by posting notices in and about the hotel, but this attempt was found by the master to be null and void as a violation of the laws of the order.   His finding was based in part on the ground that the word

"place" as used in those laws means more than merely the city or town in which the convention is to be held. He found also that it required an official act to establish the place of meeting, and that the acts establishing Niagara Falls and the Assembly Hall of the Cataract Hotel as such place alone were official.

The so called "Kirkland" faction convened on the appointed day in the Assembly Hall of the Cataract Hotel. The supreme grand master of the order failed to put in an appearance and a committee was appointed to seek him. He was found but refused to come to the Assembly Hall. The deputy grand master was not found. Thereupon the meeting organized under the leadership of the third officer, the supreme grand lecturer. The master found that in the absence of the other two it was proper to open proceedings under the leadership of this officer. He also found that he was still in office as grand lecturer notwithstanding his attempted removal by the supreme grand master; we cannot say upon the record that this conclusion was wrong as matter of law. Meantime, in the same hotel in another room, which could not properly be designated as the Assembly Hall, the "Lemmon" faction held its meeting, organizing under the leadership of the supreme grand master, and having in that room the charter of the Supreme Grand Lodge. This meeting was adjourned to a hall in another building.

According to the laws of the order, in the event of inability to act on the part of the supreme grand master and the supreme deputy grand master, the supreme grand lecturer is to assume their duties and be vested with their prerogatives. The master found that the grand master and the deputy master deliberately absented themselves; that through their intentional absence and refusal to come to the meeting they were unable to perform their functions; and that this constituted "inability" within the meaning of the laws of the order. The statements in the report as to the controversies leading to the existence of two factions were not open to objection. The findings as to suspensions made and the recitals of the doings of the credential committee before the convention were stated to be immaterial

so far as the validity of the convention was concerned, and these findings are not shown to have affected the plaintiff's rights to its prejudice. It is not contended that the Assembly Hall was not a proper place for holding the meeting, and upon the facts found the officials did not fail to attend the meeting from fear of violence; no sufficient reason has been shown for changing the room designated in the call. All delegates were entitled to an official notification of the place of meeting, given in a reasonable time and manner. After the room for the meeting had been officially designated, a change of room was a change of place, and no reasonable notice of this change was given. No error of law appears in the finding that the notice given of change of room was not properly signed, attested and sealed. The finding that no member of the absenting faction presented himself at the Assembly Hall or was refused admission was a competent fact to be considered.

We are of opinion that upon the facts found the refusal or failure of the grand master and deputy grand master to attend the meeting in the room designated in the call justified the master in concluding that they were unable to function as such officers within the meaning of the by-law. They could not by voluntarily absenting themselves and keeping possession of the original warrant or charter of the Supreme Grand Lodge prevent the lawmaking body of the order from holding a meeting. The master found that in so far as it is a question of fact the common law of the order did not require presence of the charter or warrant at a meeting. It would be an unreasonable construction of the requirements of the Supreme Grand Lodge to hold that absence of the charter or warrant from the meeting place under the circumstances disclosed did, as matter of law, make the meeting illegal. The master's conclusion to the effect that the legal meeting of the Supreme Grand Lodge was that held in the room designated in the call, and that the attempted change of room was ineffectual, cannot be reversed. It follows that the Supreme Grand Lodge, which revoked the State charter in 1916 and granted the charter to the defendant association in 1925, under which the State Grand Lodge was reorganized,

was the same body that issued the charter in 1880 under which the State Grand Lodge functioned until 1916.   In so far as the convention at Niagara Falls affects the rights of the parties, the defendant association has established the right to act as the State Grand Lodge in Massachusetts under its charter from the Supreme Grand Lodge, and the plaintiff has failed to establish its right to injunctive relief.   The plaintiff's exceptions relating to the Niagara Falls meeting numbered seven to sixteen inclusive are overruled.

After the Niagara Falls meeting the "Lemmon" faction, contending that the convention held by it was the legal convention, purported to function as a Supreme Grand Lodge.   The plaintiff attempts to support its claim that this faction is the only legitimate body by proving its recognition by the Triennial Council of the World, which purported, in its by-laws, to have power to deal with and act as supreme arbiter in all disputes between grand lodges, and in appeals, with power of arbitration in all matters referred to it, but not to interfere with the internal affairs of any grand lodge except such as should be submitted to it by request of the grand lodge concerned.   Some time after the Niagara convention, the "Lemmon" faction invoked the aid of the Triennial Council in connection with its dispute with the "Kirkland" faction, and the council purported to recognize the "Lemmon" faction as the legitimate Supreme Grand Lodge of the United States.   A committee representing the "Kirkland" faction also appeared and each committee made a statement to the council.   The "Kirkland" committee, however, did not submit itself or its cause to the jurisdiction of the council but stated its position, claimed its legitimacy, and denied the right of the council to decide the matter.   .

If it be assumed that the rivalry between the two factions, each claiming to be the Supreme Grand Lodge of the order, was a dispute between grand lodges within the meaning of the by-laws of the council, still, upon the findings, we cannot say there was error, as matter of law, in the master's conclusions that the council did not have jurisdiction to order before it for hearing any grand lodge unwilling to submit to its jurisdiction; that the limit of its power was to act as

arbiter in disputes submitted to it; and that the "Kirkland" faction did not request it to act or submit to its jurisdiction, and is not bound by its recognition of the "Lemmon" faction.   The plaintiff cannot successfully contend that it has gained the right to injunctive relief against the defendants because of the action taken by the Triennial Council.

The seventeenth objection was too general in its terms to be the basis of a valid exception.   Equity Rule 26 (1926). Unless objections are made in conformity to the rule they need not be considered by the court.   *McCarthy* v. *Waltham Co-operative Bank,* 234 Mass. 512, 513.

The eighteenth exception is to the attachment to the record of certain proceedings in equity in the Circuit Court of Baltimore City, Maryland.   The master left to the court the decision as to the admissibility of the records, stating that he did not admit them but made his findings on the evidence exclusive of the records.

The defendants' contention is that they were admissible only in case it should be found that the plaintiff is the State Grand Lodge acting under authority of the Supreme Grand Lodge, "Lemmon" faction.   It is apparent that the plaintiff was not a party or privy to any party to the proceedings in Maryland; the issues were not identical with those in the case at bar; the decision there rendered was not *res judicata;* and the records offered were not competent evidence.

The master was unable to find that the defendants "as individuals, or as a voluntary association, have been guilty of any infringement upon the corporation name of the plaintiff or interfered in any improper way with the exercise of its corporate functions, or the enjoyment of its corporate franchise."   Upon the facts found the confusion which may have arisen from the right of the plaintiff and of the defendant voluntary association to use and be known by the same name presents no ground for injunctive relief, and the plaintiff has not maintained the burden of proving that the defendants are unlawfully interfering with any of its rights.

The authority of the defendant association to function as the grand lodge in Massachusetts by virtue of the charter granted in 1925 by the Supreme Grand Lodge, which has had

a continuous existence from a time antedating the incorporation of the plaintiff, has been established, but it does not follow that the injunctive relief for which the defendants have asked should be granted.   There was evidence that the corporation had no property and did nothing.   The master found that it has elected officers and been kept alive but has been inactive.   It is apparent from the findings that the chapter of the Supreme Grand Lodge, "Lemmon" faction, purporting to function in Massachusetts at the time of the hearings before the master, was a voluntary association, notwithstanding the plaintiff's contention at one time made before the master that the plaintiff was the only legitimate State grand lodge of the Orange order.

After the master's report was filed, the defendants moved that the voluntary association created in 1880, of which MacKillop is grand master, be made a party.   It is not contended that sufficient reason appears for reversing the order denying that motion.   The master found that this grand lodge was not a party unless it and the plaintiff were as matter of law the same body.   The officers elected to the corporation were usually identical with those elected by the voluntary body to fill its chairs.   MacKillop was elected grand master by the "Lemmon" faction, in Massachusetts, at its convention.   He was also president of the plaintiff corporation.   The "Lemmon" faction has held sessions claiming to be a legitimate body, has elected grand masters and carried on business.   Upon the findings it cannot be ruled that the State Grand Lodge of this faction was merged in the plaintiff.

The findings here mentioned, together with those previously referred to, lead to the conclusion that the defendants have not maintained the burden of proving that the activities of the plaintiff as a corporation have been of such a nature as to entitle the defendants to injunctive relief. The rightful use of its name by the plaintiff, the affiliation of its members with the "Lemmon" faction, the unsuccessful attempt of the plaintiff to prove that that faction is the true body of the Orange order and to establish the other contentions made in this suit, do not call for such relief.

*Decree affirmed.*