IOWA ASSOCIATION OF THE BLIND, d/b/a National Federation of the Blind of Iowa, Peggy Pinder, Robert Ray, Charles Erickson, H.E. Stutters, and Cheryl Finley, Plaintiffs-Appellants/Cross-Appellees,

v.

Sylvester NEMMERS, as purported President of an association pretending to be the plaintiff, and as an individual, Patrick Scholl, as purported Treasurer of an association pretending to be the plaintiff; and an Association pretending to be the plaintiff, Sylvester Nemmers, President, Defendants-Appellees/Cross-Appellants.

No. 2–69030.

Court of Appeals of Iowa.

Aug. 30, 1983.

Eugene Davis and Robert C. Rouwenhorst of Davis, Grace, Harvey, Horvath, Gonnerman & Rouwenhorst, Des Moines, for plaintiffs-appellants.

Alan A. Anderson of Phipps, Le Tourneau, Anderson, Phipps & Runyon, Des Moines, for defendants-appellees.

Heard by OXBERGER, C.J., and DONIELSON, SNELL, SCHLEGEL, and HAYDEN, JJ.

DONIELSON, Judge.

Plaintiffs appeal and defendants cross-appeal from the decree in this action for declaratory and injunctive relief to enforce plaintiffs' right to organizational offices, trade names, and assets. Plaintiffs assert that the national organization's right to reorganize the Iowa affiliate was established by contract and that any rights of defendants were waived by failure to exhaust internal organizational remedies. Defendants assert that the trial court should have recognized their right to use of the trade name at issue as well as their right to local organizational offices and assets. Since this action was in equity, our review is de novo. Iowa R.App.P. 4. We affirm in part, reverse in part, and remand.

This case involves the struggle between two competing factions for control of the Iowa Association of the Blind, doing business as the National Federation of the Blind of Iowa ("NFBI"), the state affiliate of the National Federation of the Blind ("NFB"), a Washington, D.C. corporation. Plaintiffs claim to be the rightful officers of the NFBI and have maintained their allegiance to the policies of the national organization and its president, Dr. Kenneth Jernigan. Defendant Nemmers was first elected president of the NFBI in 1970 and has retained that office at least until May, 1981, when the events giving rise to this action occurred; i.e., the NFB expelled Nemmers from that organization, removed him as NFBI president and reorganized the Iowa affiliate. This reorganization led to the election of plaintiffs as the new NFBI officers. Nemmers, defendant Scholl, and others claim to be the rightful NFBI officers, alleging that the NFB's actions in May of 1981 were without authority and therefore had no effect on the then-existing NFBI organization. A pre-trial order of March 8, 1982, listed the issues to be resolved as follows:

1. Who are the rightful officers and directors of the Iowa Association of the Blind, d/b/a National Federation of the Blind of Iowa.

2. Who is entitled to use the names Iowa Association of the Blind, National Federation of the Blind of Iowa, or substantially similar variations thereof, including abbreviations or initials.

3. Who is entitled to properties and monies raised, owned or held in the name of the Iowa Association of Blind or National Federation of the Blind of Iowa and an accounting of such properties and monies.

I.

The national organization was formed in 1940 and was incorporated under District of Columbia law in 1949 for the purposes of promoting the rights and interests of blind people. The NFB is composed of state and local affiliates and chapters throughout the nation. The Iowa Association of the Blind was created at the turn of the century, became an affiliate of the NFB in 1941 (and has been ever since), and was incorporated under Iowa law in 1946. The Iowa Association changed its name in 1971 to the National Federation of the Blind of Iowa. This was done to conform to the trend in which the various state affiliates were changing their names so as to include the phrase "National Federation of the Blind" or variations thereof. This name was trademarked and copyrighted by the NFB in 1971 which also issued that year a new charter of affiliation to the NFBI.

Beginning about 1980, there emerged a number of disputes between Nemmers (and other members of the Iowa affiliate) and the policies of the National Federation. These disputes came to a focus in connec-

tion with appeals that were taken to the National Board regarding questioned elections in the Des Moines and Orientation Alumni chapters of the NFBI in the fall of 1980. On November 10, 1980, Jan Ray wrote to Dr. Jernigan appealing a decision of the NFBI regarding an election and other proceedings in the Des Moines Chapter. On the same date, Cheryl Finley wrote to Jernigan appealing the NFBI's action regarding elections and proceedings in the Orientation Alumni Chapter.

On November 18, 1980, Jernigan wrote to Nemmers and the two complainants giving them notice that the NFB Board of Directors would consider the matters at a meeting to be held November 29, 1980. Nemmers was invited to attend or send written statements. He did not attend the meeting, but sent two letters, dated November 18, 1980 and November 24, 1980, enclosing various materials. On November 29, 1980, the NFB Board, after meeting and considering the matter, issued its "Findings of Fact and Statement of Policy," which, among other things, stated that the two elections in question were illegally called and held, and were null and void, and that other elections held in these chapters were the legal elections, and the officers thereby elected were the lawfully elected officers. The Resolution called on the NFBI Board of Directors to take note of the National Board's Finding of Fact and Statement of Policy and to act accordingly. On January 10, 1981, the Iowa Board, in defiance of the ruling of the NFB Board, issued its own "Finding of Fact and Statement of Policy." The Iowa Board made contrary findings and statements as to these two elections (and other things), and indicated that it would not carry out the decision of the National Board. These "Findings" were sent to Jernigan with a letter from Nemmers dated March 6, 1981. On March 24, 1981, Jernigan wrote Nemmers, again asking the Iowa affiliate to withdraw from its position. On April 17, 1981, Nemmers replied, saying:

You will also recall that the Board of Directors of the NFBI has issued a Finding of Fact and Statement of Policy con-cerning the two chapters. We stand by that Finding of Fact and Statement of Policy.

The National Board met on May 18, 1981, and passed a resolution removing Nemmers as President of the NFBI and expelling him from membership in the NFB. The resolution also directed that

. . . the National Federation of the Blind of Iowa shall be reorganized and that elections for officers and board members shall be held on the weekend of May 23, 1981.

The Annual Meeting of the NFBI was to be held on May 23–25, 1981, on the third floor of the Marriott Hotel in Des Moines. Nemmers distributed an agenda for the meeting. Under "Pre-Convention Activities" to take place Saturday afternoon, May 23, there was listed:

2:00 P.M.—Registration—Mr. H.E. Stutters and 2:00 P.M.—Board of Directors Meeting.

These were the earliest scheduled events. Stutters was the NFBI treasurer. On the evening of Friday, May 22, 1981, a printed "Special Announcement" of a meeting of all Federationists was posted and distributed in the hotel. A copy was handed to Nemmers. The meeting was to be on the second floor of the Marriott at 1:00 p.m. on Saturday.

The 1:00 p.m. meeting was held on Saturday, May 23rd with Nemmers present. Jernigan read the resolution that had been adopted by the National Board on May 18, 1981. A copy was handed to Nemmers. As noted, the resolution required reorganization of the Iowa affiliate. A new agenda was read and distributed. Registration then proceeded, with H.E. Stutters in charge. Members wishing to participate in the reorganizational meeting signed a pledge of support for the actions and policies of the NFB and its Board. Stutters, among others, signed this pledge.

The reorganizational meeting of the NFBI then proceeded as outlined in the new agenda. Election of officers was carried out on Sunday, May 24th, resulting

in the election of the named individual plaintiffs. A number of resolutions were passed, including one directing Peggy Pinder, as new president, to take such steps as necessary, including legal action, to protect the name of the organization and to recover and preserve its assets. Pinder wrote to Nemmers on May 25, 1981, notifying him of these events and demanding that he cease using the names National Federation of the Blind of Iowa and Iowa Association of the Blind, Inc., and that the assets be turned over to the rightful officers. Nemmers, however, continued to claim he was president of the NFBI. In ensuing months he and his associates continued to raise funds, using the name or initials of the NFB.

The NFB Constitution provides for appeal to the National Convention of action by the NFB Board to expel a member or to reorganize an affiliate. Unless or until the Board's action is reversed by the National Convention, however, it stands as the action of the Federation. On June 15, 1981, Nemmers wrote to Jernigan indicating that he wished to appeal and be heard at the National Convention to be held in Baltimore, as to his expulsion from the NFB and removal as president of the Iowa affiliate. He did not appeal from the order directing reorganization of the Iowa affiliate. The National Board sitting as the credentials committee, met on Monday, July 6. Nemmers and John Taylor appeared and spoke. After hearing them, the Board voted unanimously to seat the reorganized affiliate from Iowa. Nemmers appeared on the Convention floor at its Tuesday morning session, July 7, 1981. A motion was made to seat the Pinder delegation temporarily and to carry Nemmers' appeal over to Friday. Both motions carried. During the debate on the motion, Nemmers said he would not be around on Friday. Jernigan again offered Nemmers the right to have his appeal heard on Friday, but Nemmers replied, "I wish no appeal on Friday."

In the meantime, on May 28, 1981, plaintiff NFBI filed this petition for injunctive and declaratory relief against the Nemmers group, alleging *inter alia* that the NFB constitution authorizes the national board to discipline any member and reorganize a state or local affiliate by a two-thirds vote or by a simple majority of states present and voting at the NFB national convention. Plaintiff requested a declaration that the Pinder slate of officers, elected during the May 24, 1981, reorganizational meeting, were the only lawful officers of the NFBI and that the Nemmers group be enjoined from holding themselves out as NFBI officers. Plaintiff also sought: 1) to enjoin defendants from using the name "National Federation of the Blind of Iowa" or any variation thereof, and 2) an accounting of all money and property held or raised by defendants under the NFBI name since the reorganization. The new officers were later added as individual parties plaintiff. Defendants' answer denied that the NFB actions in expelling Nemmers from the NFB, removing him from the NFBI presidency, and reorganizing the Iowa affiliate were valid.

Trial was held to the court in April of 1982. On June 3 of that year, the court issued its findings and judgment and held: (1) that the defendants are the rightful officers and directors of the Iowa Association of the Blind, (2) that the defendants, and the organization of which they are officers, are not entitled to use the name National Federation of the Blind of Iowa or any essential derivative, and (3) that the organization headed by the defendants is entitled to the properties and funds identified in the stipulation of the parties. Plaintiffs' post-trial motion to amend and enlarge findings and modify judgment was overruled, and they filed this appeal. Defendants cross-appealed from the court's holding that they were not entitled to use the NFBI name.

## II.

The pivotal question in this case is: Were the actions of the NFB board of directors in disciplining Nemmers and reorganizing the Iowa affiliate of the NFB authorized by the national and state federation constitutions and therefore binding on the NFBI and its

officers? This question in turn requires a close examination of the relationship between the NFB and the NFBI and the distribution of power between the national and state organizations and the degree of autonomy enjoyed by the latter. The trial court held that the NFB's actions, although authorized by its own constitution, were null and void because they were not specifically authorized by the NFBI constitution. The court also stated its belief that NFBI's affiliation with the NFB did not nullify the NFBI constitution or subject the NFBI to unilateral reorganization by an outside entity; i.e., the NFB.

Trial testimony indicated that one automatically becomes a member of the NFB by becoming a member of a state affiliate. The NFB Constitution, Article III, Sect. A states that "[t]he membership of The National Federation of the Blind shall consist of the members of the state affiliates plus members at large." Section E of Article III was the basis for Nemmers' removal from the NFBI presidency and expulsion from the NFB:

> Any member, local chapter, or state affiliate of this organization may be suspended, expelled, or otherwise disciplined for misconduct or for activity unbecoming to a member or affiliate of this organization by a two-thirds vote of the Board of Directors or by a simple majority of the states present and voting at a National Convention.

Article V, Section A recognizes the NFB national convention as the "supreme authority" of the organization which "has final authority with respect to all issues of policy." The NFBI reorganization was done in this case under the alleged authority of Section B of Article V which provides in part:

> By a two-thirds vote the Board may reorganize any state or local affiliate. The Board may not ... reorganize a state or local affiliate except for good cause and after a good faith effort has been made to try to resolve the problem by discussion and negotiation. If a dispute arises as to whether there was "good cause" or whether the Board made a "good faith effort," the National Convention (acting in its capacity as the supreme authority of the Federation) shall have the power to make final disposition of the matter; but until or unless the Board's action is reversed by the National Convention, the ruling of the Board shall continue in effect.

Article VI sets forth the responsibilities of NFB affiliates to the national organization and the NFB's proprietary rights to that name:

> Affiliates must not merely be social organizations but must formulate programs and actively work to promote the economic and social betterment of the blind. *Affiliates must comply with the provisions of the Constitution of the Federation. Policy decisions of the Federation are binding upon all affiliates, and the affiliate must participate affirmatively in carrying out such policy decisions.* The name *National Federation of the Blind, Federation of the Blind,* or any variant thereof is the property of The National Federation of the Blind; and any affiliate, or local chapter of an affiliate, which ceases to be part of The National Federation of the Blind (for whatever reason) shall forthwith forfeit the right to use the name *National Federation of the Blind, Federation of the Blind,* or any variant thereof. (emphasis added.)

Article IX of the NFBI constitution states that the Iowa organization "shall be an affiliate of the National Federation of the Blind." The NFBI is committed under Article II of its constitution "to cooperate with the National Federation of the Blind in its various activities." Article X requires the NFBI to select at least one delegate and one alternate to attend the NFB annual convention. At trial, Nemmers admitted that the NFBI was obliged to follow the policies set forth by the NFB and that he, as NFBI president, refused to do so in this case. He also stated, however, his belief that the NFB could reorganize a state affiliate only when such action was agreed to by a majority of the members of such affiliate.

### III.

We believe the trial court erred in holding the NFB was without authority to effectively remove Nemmers from the NFBI presidency and reorganize the Iowa affiliate. Specifically, the trial court erred in holding that the expulsion and reorganization provisions of the NFB constitution are not binding on the NFBI absent an explicit recognition and acceptance of those provisions by the Iowa affiliate in its constitution or bylaws. The following language is found in 10 C.J.S. *Beneficial Associations* § 60 (1938): "[t]he charter of a subordinate lodge and the constitution and by-laws of the parent organization constitute a contract between the two." The Iowa supreme court has recognized this principle and has also stated that "[m]ost, if not all, courts and authorities generally agree that constitutions, charters, and by-laws of charitable fraternal organizations, subscribed to by an affiliate lodge and its members, are binding." *Grand Lodge of Iowa of Independent Order of Odd Fellows v. Osceola Lodge No. 18, Independent Order of Odd Fellows,* 178 N.W.2d 362, 367 (Iowa 1970). By becoming and remaining an affiliate of the NFB, the NFBI accepted the responsibilities of affiliates as set forth in the NFB constitution and agreed to be subject to its provisions and policies. The affiliation relationship would be meaningless if the NFBI could pick and choose which rules and policies of the parent organization it agreed to abide by and ignored the rest.

The trial court's decision stemmed in part from its conclusions that a national organization's power to reorganize its state affiliates and remove their officers must be specifically provided for by statute and that, absent such authority, affiliation "does not and cannot in law effect a merger of the two corporations." We believe this analysis ignores the special characteristics of beneficial or charitable organizations such as the National Federation of the Blind and its state affiliates. These groups are not regular business corporations and are not to be so treated. While the corporate existence of the state affiliate is certainly governed by state law (*see* Iowa Code ch. 504—Corpo-

rations Not for Pecuniary Profit), the internal structure of the affiliate and the relationship between it and the parent national organization is not.

> "The power of the central organization of a beneficial association to suspend or to expel a local branch body or to forfeit its charter, as well as the power of particular superior officers in this respect, depends primarily on the society's charter of incorporation or articles of association and its constitution and by-laws, and not a statutory grant."

10 C.J.S. *Beneficial Associations* § 64 (1938). Thus, the NFB's power to reorganize the NFBI and remove Nemmers as its president is to be determined from the NFB constitution which, as indicated above, clearly authorizes such actions.

We also reject the trial court's holding that affiliation, at least in this case, does not effect a merger of the NFB and NFBI. In *United States Jaycees v. San Francisco Junior Chamber of Commerce,* 354 F.Supp. 61 (D.C.Cal.1972) aff'd per curiam 513 F.2d 1226 (9th Cir.1975), the court granted plaintiff national organization's motion for summary judgment in its action to restrain defendant disaffiliated local chapter from using plaintiff's registered trademark names "Junior Chamber of Commerce" and others. The court also held:

> Notwithstanding the fact that defendant SFJCC was organized approximately one year prior to its affiliation with State and three years prior to its affiliation with National, *any separate existence defendant* SFJCC *might have had prior to its affiliation* with plaintiffs *was merged with plaintiff organizations upon* SFJCC's *affiliation with and charter membership in these organizations.*

354 F.Supp. at 72 (emphasis added). *See also Grand Lodge Improved, Benevolent Protective Order of Elks of the World v. Eureka Lodge No. 5, Independent Elks,* 114 F.2d 46, 48 (4th Cir.1940) *cert. den.* 311 U.S. 709, 61 S.Ct. 319, 85 L.Ed. 461. Likewise in this case, any prior separate existence the NFBI (under the name Iowa Association of

the Blind) may have had was merged with the NFB when it became a chartered affiliate of the national organization. By becoming an affiliate of the NFB, the NFBI agreed to be bound by the NFB constitution and policies, including those provisions invoked by the NFB in this case.

## IV.

Because NFB's reorganization of the NFBI and its removal of Nemmers as president of the latter were authorized by the NFB constitution and because such actions were binding on the NFBI, the trial court erred in not holding that the Pinder slate of officers (individual named plaintiffs) are the rightful officers of the NFBI. The court also erred in holding that defendants are entitled to the property held and obtained by them as NFBI officers after the Pinder officers were elected in the state reorganization. We affirm the court's injunction against defendants' use of the NFBI name. *See United States Jaycees,* 354 F.Supp. at 71. We remand to the trial court for entry of judgment in conformity with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

All judges concur, except SCHLEGEL and SNELL, JJ., who dissent.

SCHLEGEL, Judge (dissenting).

I respectfully dissent.

I do not believe the position of the majority finds support in the law. At issue is the control and future operation of an Iowa corporation (Not for Pecuniary Profit) formed under the provisions of Iowa Code chapter 504. This corporation, existing under a Constitution providing for its management, elections of officers, and regular and special meetings, is said by the majority to be subject to the will of the Board of Directors of the National Federation of the Blind (NFB) by virtue of its affiliation with that organization.

The majority correctly states the "pivotal question," but a close examination of the relationship of NFB and NFBI (Iowa Association of the Blind, d/b/a National Federal of the Blind of Iowa) and the distribution of power between the national and state organizations and the degree of autonomy of the latter does not support the majority's conclusion.

It is correct that NFB's Constitution states that any member, local chapter, or state affiliate may be suspended, expelled, or otherwise disciplined for reasons set out therein. It is also correct that the constitution of NFB contains the language: "By a two-thirds vote the Board may reorganize any state or local affiliate." No article or bylaw of the NFB directs the manner in which such a reorganization should take place, and there is no direction as to how the NFB Board is to comply with the laws of the several states in bringing about that reorganization.

We must look to the organic documents of the Iowa affiliate and the provisions of the Iowa statutes governing such corporations to determine the means by which it may be reorganized. Nowhere in the constitution of the Iowa Association of the Blind d/b/a NFBI does there appear any provision granting to the NFB or its officers the power to call meetings, to elect officers, or to amend the constitution of the Iowa affiliate. The Iowa corporation cannot be altered, or in fact, "reorganized," except under the procedures set out in its constitution adopted pursuant to law.

I have no difficulty in agreeing that the NFB has the right to demand certain actions by its affiliated state organizations, and that it has a right, under proper circumstances, to oust members from its organization under rules properly adopted, at least where property rights of those members are not involved or are safeguarded. 10 C.J.S. *Beneficial Associations* § 64 (1938). Thus, I do not quarrel with the right of the board of directors of NFB to expel Sylvester Nemmers, or to declare the affiliation of NFBI terminated. While the board did the former, it did not seek to terminate the affiliation of the Iowa corporation. The majority finds that it is legal and proper for the president of NFB to

declare the office of president of the state affiliate vacant, and to proceed to cause the election of a totally new slate of officers of the state affiliate, without any requirement that the rules or articles of the state corporation be followed. At best, it can only be said that under Iowa law NFB caused the formation of an unincorporated association, elected officers of that association, and showed an intent to consider it the Iowa affiliate. *See Grand Lodge of Massachusetts Loyal Orange Institution v. Snow,* 266 Mass. 483, 491, 165 N.E. 479, 482 (1929) (although the [state corporation's] existence as an instrumentality of government of the order must depend upon its receiving and retaining a charter from the Supreme Grand Lodge of the order, its corporate charter granted by a State cannot be forfeited or suspended by that national body).

The majority holds that the trial court "erred in holding the NFB was without authority to effectively remove Nemmers from the NFBI presidency and reorganize the Iowa affiliate." Assuming, without agreeing that such authority existed in NFB, the process by which such removal and reorganization would take place cannot violate the constitution and statutory law relating to such matters. To hold that one who has no standing under the constitution or laws applicable to a not-for-profit corporation may carry out such a process is to hold that the duly adopted constitution of the Iowa affiliate, and the Iowa statutes under which it was adopted, are meaningless.

I cannot agree that the provisions contained in the state affiliate's constitution, when considered with the provisions of the constitution of the NFB constitute a contract between the two, and bind the affiliate to the provisions of the NFB constitution. The majority quotes language from 10 C.J.S. *Beneficial Associations* § 60 (1938), as follows: "[t]he charter of a *subordinate lodge* and the constitution and bylaws of the *parent* organization constitute a contract between the two," and from *Grand Lodge of Iowa of Independent Order of Odd Fellows v. Osceola Lodge No. 18, Independent Order of Odd Fellows,* 178 N.W.2d 362, 367 (Iowa 1970), as follows: "[m]ost, if not all, courts and authorities generally agree that constitutions, charters, and bylaws of *charitable fraternal organizations, subscribed to by an affiliate lodge and members,* are binding." (emphasis supplied). In the *Odd Fellows* case, the sole issue for decision was whether the action commenced by the "parent" organization was barred by the statute of limitations. However, that matter aside, it is obvious from a reading of that case, it involved a fraternal lodge, complete with specific rules for affiliation, and specific provisions respecting the holding of assets. The court refers to documents of the parent lodge which had been subscribed to by the affiliate lodge and the members. Such is not the case in this matter.

The same article at 10 C.J.S. *Beneficial Associations* § 64 (1938), contains the following language: "If a subordinate lodge is incorporated, its legal existence is not affected by the fact that the supreme authority suspends or dissolves it or declares its charter forfeited, and in such case it is entitled to retain its funds and property as against the supreme body."

It is apparent from the cases involving fraternal lodges, the affiliates depend, for their very existence, upon the charter issued by the so-called parent organization or Grand Lodge. Such is not the case with Iowa Association for the Blind. It existed as a separate corporate entity before it affiliated with NFB, and it still exists as a separate corporate entity, existing under the provisions of Iowa Code chapter 504. The words "shall be an affiliate of the National Federation of the Blind," as contained in Article IX, as it appeared before the 1981 amendments, and the words, "to cooperate with the National Federation of the Blind in its various activities" as contained in Article II of the Iowa organization's constitution, do not create contractual obligations. They are vague statements of intent to work toward the goals of the NFB. They specifically preserve the autonomy of the Iowa corporation.

What constitutes a contract between an organization and its affiliate must depend upon the undertakings contained in the constitutions, bylaws, and charters of both organizations. To hold that the obligations of an affiliate may be determined and changed from time to time by unilateral action of the so-called parent organization, is to hold that a contract may be created without any meeting of minds.

The majority despairs of the trial court's conclusions that a national organization's power to reorganize its state affiliates and remove their officers must be specifically provided for by statute, and that, absent such authority, affiliation "does not and cannot in law effect a merger of the two corporations." The majority rejects the trial court's holding that, at least in this case, affiliation does not affect a merger of the NFB and NFBI. Once again, the cited case does not stand for authority for the merger of these organizations. *United States Jaycees v. San Francisco Junior Chamber of Commerce,* 354 F.Supp. 61 (N.D.Cal.1972), aff'd. per curiam, 513 F.2d 1226 (9th Cir. 1975), was a case where the issue was whether a seceding local group could continue to use the name "San Francisco Junior Chamber of Commerce," or some variation of it. Their argument was that since their organization had been formed before the national Jaycees organization, and they had affiliated with the national group later, they should be able to use their former name after secession. The court held that the San Francisco group couldn't use the name or a similar name to the one of the national organization. The language of the court, quoting the case of *Grand Lodge v. Eureka Lodge No. 5,* 114 F.2d 46, 48 (4th Cir.1940), was: "Any separate existence which [the seceding local chapter] may have had prior to 1899 [the year of defendant's affiliation with the plaintiff collective order] was merged with that of the plaintiff on acceptance of the charter." In that case, there was no discussion concerning the right of the local group to exercise independence from the national group, nor any attempt by the national to exercise control over the local group. It is obvious in those cases that the court held the locals' right to use the name was the only thing that merged.

It is a basic principle of corporation law, whether they be for profit or not-for-profit, that there is no right of merger, except by statute. No such privilege exists under Iowa Code chapter 504. To merge is said to lose or cause to lose identity by being absorbed, swallowed-up in or within something else. *Webster's New World Dictionary* 889 (Second Edition 1974). Such a condition implies an inability to retain a separate identity apart from that with which the merger takes place. Iowa law does not permit a merger without statutory authority. *See Millers National Insurance Co. v. Iowa Kemper Mutual Insurance Co.,* 408 F.2d 534, 536 (8th Cir.1969) (Iowa Code chapter 521 provides for corporation consolidation but makes no specific provision for merger). There is even some question as to whether National Federation for the Blind is authorized to carry on any business in the State of Iowa. Iowa Code §§ 504.28–504.31 (1981). In any event, there was never any intent that the Iowa group should lose its identity or independence to act in cooperation with the national organization. Rather, the Iowa organization continued with projects of its own, a treasury of its own—unaccountable to the national group—and with a constitution providing for the election of officers and the conduct of the affairs of the association. Such is not the procedure of a merged association.

I have no quarrel with the NFB's right to demand adherence by its affiliates to its principles, in order for the affiliates to retain their affiliate status. I have no quarrel with the right of NFB to oust NFBI from affiliation with that group. I have no quarrel with the right of the NFB to oust any individual member of that organization under the provisions of its constitution. It certainly has a right to choose which organization will be permitted to be known as an affiliate of NFB. I do not question the good faith of the board of directors of NFB, nor of the officers of that organization in the decisions they made concerning the

Iowa affiliate. *See Vicksburg Lodge, No. 26 v. Grand Lodge of Free And Accepted Persons of Mississippi,* 116 Miss. 214, 226, 76 So. 572, 576 (1917) (the parent lodge had the right, if pursued in the proper way and according to its rules and regulations, to sever the relations between it and the subordinate lodge and cancel any rights it had conferred by virtue of the charter granted by it; but it did not have the right to take from the corporations created under the laws of the state its property without due process of law). They are, however, bound to proceed by legal means under the laws of Iowa, to remedy the situation they feel is in need of change. We cannot establish a precedent that allows a national officer of a parent group to carry out a process totally outside the provisions of a constitution of an Iowa corporation, and rule that such proceedings are effective to reorganize an Iowa corporation. Such process can only lead to confusion and anarchy in such organizations.

I believe the trial court was correct in holding that the so-called "Nemmers group" constitutes the duly elected officers of the Iowa Association of the Blind, d/b/a National Federation of the Blind of Iowa. I am in accord with the principle that *when* and *if* the Iowa Association of the Blind is ousted as the affiliate of National Federation of the Blind, it shall no longer be entitled to use the name National Federation of the Blind of Iowa, nor any similar name. I point out, however, that such ouster by the NFB Board has not yet occurred. Mr. Nemmers has been expelled as a member of National Federation of the Blind. He is still the president of Iowa Association of the Blind. The governance of the Iowa Association of the Blind, d/b/a NFBI, is still under the constitution and such bylaws as are a part of the rules adopted by the Iowa corporation.

I would affirm the trial court, except that I believe the imposition of the injunction against the use of the name National Federation of the Blind of Iowa was premature, since such organization has not, as of the time of trial, been expelled or ousted as the affiliate in the State of Iowa.

For all of these reasons, I dissent.

SNELL, J., joins this dissent.